**Ronald WILLIAMS, et al.,
Plaintiffs-Appellants,**

v.

**Robert KUNZE, IRS Agent, et al.,
Defendants-Appellees.**

No. 85–1784.

United States Court of Appeals,
Fifth Circuit.

Dec. 24, 1986.

Lawrence N. Bazrod, MacPherson & McCarville, Donald W. MacPherson, Phoenix, Ariz., for plaintiffs-appellants.

William A. Whitledge, Atty., Roger M. Olsen, Acting Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Sec., and Charles E. Brookhart, Tax Div., U.S. Dept. of Justice,

Washington, D.C., for defendants-appellees.

Before GARZA, DAVIS and JONES, Circuit Judges.

GARZA, Circuit Judge.

Sometime before May of 1984, the Criminal Investigation Division of the Internal Revenue Service conducted an investigation of the activities of several allegedly fraudulent tax shelter schemes organized and operated from the Cayman Islands by United States Tax Planning Services, Ltd. ("USTPS"). The USTPS schemes involved the use of offshore entities and transactions to put funds beyond the reach of the IRS for the purpose of evading income taxes. USTPS is marketed through entities licensed by USTPS. The Plaintiff-Appellant, Worldwide Capital Management Corporation ("WCM"), a tax shelter planning consultant, was a licensee of USTPS.

Special Agent Robert Kunze, Defendant-Appellee, was assigned to determine whether WCM's activities violated the Internal Revenue Code. Under Kunze's direction, another agent acted in an undercover role as a broker and contacted WCM. Plaintiff-Appellant Ronald Williams, vice-president of WCM, allegedly told this agent that WCM operated to create deductions for insurance expense that did not exist through the use of offshore trusts and bank accounts. Williams also showed this agent and another agent acting as a client, the offices and records of WCM and further explained the mechanics of the illegal scheme.

Based on the information uncovered during the undercover operation, Kunze applied to a United States Magistrate for a warrant to search WCM's offices and to seize various records. The application was supported by Kunze's affidavit and the affidavit of Special Agent George Scott. Scott had previously coordinated the nationwide investigation of USTPS. The magistrate issued a warrant authorizing Kunze to search the premises of WCM and to seize eight categories of documentary evidence.[1] In essence, the Scott affidavit listed documents pertaining to the establishment of offshore entities or bank accounts, documents relating to commodity straddles, records reflecting fund transfers from or credit card transactions with offshore entities, records of insurance premiums paid to foreign corporations, client files identified with coded numbers, client prospect files and portfolio packets, and documents reflecting transactions with

---

1. The eight categories consisted of:

(1) Records, documents and correspondence relating to fund transfers between United States persons and/or entities and persons and/or entities in either the Cayman Islands or the Turks and Caicos in furtherance of the types of schemes made out in the accompanying affidavit.

(2) Records, documents and correspondence relating to credit card transactions and/or applications between Caymanian, or Turks and Caicos entities and financial institutions in either of those two countries in furtherance of the types of schemes made out in the accompanying affidavit.

(3) Records, documents and correspondence relating to transactions with the Professional Liability Insurance Company of the Turks and Caicos in furtherance of the types of schemes made out in the accompanying affidavit.

(4) Records, documents and correspondence relating to transactions with the Finsbury Bank and Trust Company of the Cayman Islands in furtherance of the types of schemes made out in the accompanying affidavit.

(5) Records, documents and correspondence relating to tax analyses and/or tax projections for three year periods by Ronald Williams and/or his agents for clients in furtherance of the types of schemes made out in the accompanying affidavit.

(6) Records, documents and correspondence relating to loans made from persons and/or entities in the Cayman Islands or the Turks and Caicos to other persons and/or entities in furtherance of the types of schemes made out in the accompanying affidavit.

(7) Records, documents and correspondence relating to corporations and trusts located in either the Cayman Islands or the Turks and Caicos in furtherance of the types of schemes made out in the accompanying affidavit.

(8) Records, documents and correspondence as summarized in the attached affidavit of Special Agent George A. Scott, incorporated herein by reference (pages 57–61).

named individuals and entities, including each of the Appellants.

On May 8, 1984, fourteen special agents and other IRS personnel conducted a search of WCM's offices and seized 50,000 to 60,000 documents pursuant to the warrant. Approximately 85% of the documents were client files. A small number of personal items were erroneously seized and were subsequently returned to Appellants. The search lasted from approximately 10:00 a.m. until 5:30 p.m.

Appellant Williams was given a copy of the warrant as the agents entered WCM's offices. The warrant did not have the affidavits physically attached to it. However, at the completion of the search, copies of the affidavits, together with a copy of the inventory of items seized, were left on Williams' desk. Williams was read his non-custodial *Miranda* rights. Williams and his attorney were on the premises during the search. Plaintiff-Appellant, James Hearn, the president and sole shareholder of WCM, was not on WCM's premises during the search.

Appellants filed a complaint in the district court on May 22, 1984, seeking the return of the seized property, injunctive relief, and the suppression of evidence. Appellants later amended their complaint seeking *Bivens*-type damages based on constitutional tort theories, specifically first, fourth, fifth and ninth amendment violations. On October 15, 1985, the court granted Appellees' motion for summary judgment. The court held that Appellants' fourth amendment claim did not overcome the agents' qualified immunity. Alternatively, it ruled that the individual defendants, Hearns and Williams, did not have standing to assert a fourth amendment claim because, as independent contractors, they had no expectation of privacy in WCM's offices. As to the first, fifth, and ninth amendment claims, the court found them to be without either factual or legal basis. On December 12, 1985, Appellants filed a timely notice of appeal.

Appellants urge several grounds for reversal. First, they argue that the warrant was invalid because it operated as a general warrant. The warrant allegedly failed to sufficiently limit the discretion of the executing officers to evidence relating to offshore entities. Second, the warrant was allegedly defective because it was overly broad. Appellants contend that although the Kunze and Scott affidavits may have established probable cause for the seizure of documents relating to offshore activities, it did not establish cause for the seizure of client files and other documents relating to domestic activity or personal items. Third, Appellants suggest that the execution of the warrant was constitutionally defective. They base this suggestion on the fact that the executing officers failed to deliver a copy of the affidavits supporting the search warrant at the commencement of the search. Fourth, the affidavits supporting the search were made in a reckless manner according to Appellants. They assert that they were entitled to a preliminary hearing on the issue of whether or not the affidavits were false or made with a reckless disregard for the truth pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

Fifth, Appellants state that Appellees' conduct violated clearly established constitutional rights, thus abrogating any qualified immunity of Appellees. It is argued that the agents had no reasonable expectations that the personal items and domestic tax planning activities would fall within the scope of the warrant. Sixth, Appellants Hearn and Williams maintain that they had standing to assert a fourth amendment claim. They believe that they maintained reasonable expectations of privacy in their business and personal effects and can assert the rights of the corporation because they acted as officers.

Finally, Appellants challenge the district court's grant of summary judgment regarding the first, fifth and ninth amendment claims. Appellants claim a violation of their right to freely associate. The seizure of personal records, notes to associates and a corporate newsletter allegedly violated associational rights as well as the

right to exercise free speech and press. The basis for Appellants' fifth amendment claim is that records were seized which were outside the scope of the warrant, and therefore a violation of due process occurred. Additionally, in acting outside the scope of the warrant, Appellees allegedly violated rights of privacy protected not only by the fourth amendment, but as well by the ninth amendment. We address these tenuous arguments in order.

■ The search of WCM's offices and the seizure of 50,000 to 60,000 documents was legal and was not violative of Appellants' fourth amendment protections. The warrant in this case did not operate as a general warrant. The fourth amendment proscribes search warrants that permit "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). The items to be seized must be described with sufficient particularity such that the executing officer is left with no discretion to decide what may be seized. *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). However, in circumstances where detailed particularity is impossible "generic language suffices if it particularizes the types of items to be seized." *United States v. Webster*, 734 F.2d 1048, 1055 (5th Cir.1984).

■ The Kunze and Scott affidavits identified eight specific categories of documents involved in the alleged unlawful evasion of United States taxes. The warrant described the items to be seized with sufficient particularity such that the executing officers did not have discretion in the type of material to be seized. The warrant limited the documents which could be seized to seven specifically described categories of documents which recorded activity "in furtherance of the types of schemes made out in the accompanying affidavit," and other documents specifically described in the Scott affidavit. The majority of WCM's business records consisted of its client files. Over 90% of the documents seized were client files. These documents were specifically authorized to be seized in the search warrant.

■ Additionally, the warrant does not indicate a distinction between offshore and domestic tax planning strategies. The warrant particularly described the documents to be seized as involving Appellants' use of offshore entities and transactions to defraud the United States. That description of the documents was sufficiently particular to permit the seizure of any documents relating to those schemes, regardless of whether the offshore connection was apparent on the face of the document. The Tenth Circuit, in *Voss v. Bergsgaard*, 774 F.2d 402 (10th Cir.1985), held that a warrant that authorized the officers to search for all evidence of a conspiracy constituted a general warrant. However, the court also recognized:

> This is not to say that a search may never properly result in the seizure of all of an organization's records. Where a warrant authorizes the seizure of particularly described records relevant to a specific crime and all of an organization's records, in fact, fall into that category, they may all lawfully be seized. 774 F.2d at 406.

Where probable cause exists to believe that an entire business was merely a scheme to defraud, or that all the records of a business are likely to constitute evidence, a warrant authorizing the seizure of all such records and describing them in generic terms is sufficient to meet the particularity requirement of the fourth amendment. *United States v. Offices Known as 50 State Distrib. Co.*, 708 F.2d 1371, 1375 (9th Cir.1983), *cert. denied*, 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984). *United States v. Jacob*, 657 F.2d 49, 52 (4th Cir. 1981), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *United States v. Brien*, 617 F.2d 299, 309 (1st Cir.), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980).

■ Second, we find that the warrant was not overbroad since the description of the documents to be seized was not broader than what was justified by the showing of

probable cause upon which the warrant was based. Appellants argue that the warrant was overbroad because it authorized the seizure of client files relating to Appellants' domestic activity when the affidavits established probable cause to seize evidence of offshore activities only. They further maintain that the warrant was overbroad in authorizing the seizure of "client files identified with coded numbers" because it allowed the seizure of all their client files, including those involving pure domestic planning.

Clearly, the Scott affidavit established probable cause to seize every client file that was identified by a coded number. Appellants assume that because the focus of the investigation centered on Appellants' activities involving the use of offshore entities and transactions, the warrant did not authorize the seizure of any document relating to domestic activity. We find this construction of the warrant inconsistent with our view. Although the focus of the IRS investigation was on the utilization of offshore entities and transactions, the affidavits supporting the warrant do not limit the seizure of documents to those evidencing offshore transactions. Even though a client file may have contained no documents reflecting offshore transactions, the file may nevertheless provide evidence of Appellants' scheme when considered in accordance with transactions contained in other documents.

■ Third, the mere failure of the executing agent to give Appellant Williams a copy of the affidavits along with the warrant at the time the search was commenced did not make the execution of the warrant constitutionally defective. Appellants were given a copy of the warrant when the search commenced and a copy of the affidavits and the inventory of the documents seized when the search ended. That set of facts fully met the requirements of Rule 41(d) of the Federal Rules of Criminal Procedure. *See United States v. Marx*, 635 F.2d 436, 441 (5th Cir.1981). Appellants suffered no prejudice in not receiving a copy of the affidavit at the commencement of the search since Appellants' possession of the affidavits would not have changed the conduct of the search or the seizure of any document.

■ Fourth, Appellants were not entitled to a *Franks* hearing on the ground that the agents' affidavits were made with a reckless disregard for the truth. *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978), held that when a defendant in a criminal case makes a substantial preliminary showing that the probable cause supporting the warrant was based on a false statement or made with a reckless disregard for the truth, the defendant is entitled to a separate hearing on his allegations. Appellants did not make the required showing, however, because they failed to point to specific facts with supporting reasons and sworn statements to demonstrate the falsity of the affidavit.

Appellant Williams did submit an affidavit that consisted of conclusory allegations that the Kunze and Scott affidavits were false. This affidavit was not sufficient. Additionally, Appellants withdrew that affidavit from evidence and refused to permit Williams to be cross-examined on it. Thus, the record does not contain, except as an offer of proof, a sworn statement supporting the allegations required in a *Franks* hearing.

■ Fifth, we agree with the district court that Appellants Williams and Hearn lacked standing to challenge the search and seizure of WCM's premises. An individual's status as the sole shareholder of a corporation is not always sufficient to confer upon him standing to assert the corporation's fourth amendment rights. *United States v. Britt*, 508 F.2d 1052, 1055 (5th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 40, 46 L.Ed.2d 42 (1975). Unless the shareholder, officer or employee can demonstrate a legitimate and reasonable expectation of privacy in the records seized, he lacks standing to challenge the search and seizure. The vast majority of documents seized by the IRS were corporate records.

Appellants Williams and Hearn had no reasonable expectation of privacy in corporate records maintained in a common file room. Therefore, they have no standing to challenge the search of the corporate premises or the seizure of the documents.

 Sixth, Appellants' contention that they alleged sufficient facts to overcome the agents assertion of qualified immunity is without foundation. Qualified immunity arises unless the agents' conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In order to impose personal liability, the Appellants must show that the seizure of specific items was illegal and that it was so illegal that it violated clearly established law. *See Saldana v. Garza,* 684 F.2d 1159, 1163 (5th Cir.1982), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983). Our review of the record indicates that Appellants did not sufficiently allege facts, either in this Court or in the lower court, showing that the seizure violated clearly established law.

Finally, the district court correctly ruled that the Appellants' first, fifth and ninth amendment claims were without either factual or legal basis. As to all of these claims, Appellants have failed to sufficiently allege facts constituting a constitutional violation. All three of these claims arise from the conduct of the search of WCM's offices and do not constitute independent claims. These claims do not form an independent basis for their action, but rise or fall with the ultimate determination regarding their fourth amendment claim. Appellants have failed to provide any evidence that the action of the Appellees deprived them of any legitimately recognized right under the Constitution.

For the reasons herein stated, the judgment of the district court is

AFFIRMED.