**UNITED STATES of America**

**v.**

**David W. JUDD, et al.**

**Crim. A. No. CRD 87–50–D.**

United States District Court,
N.D. Mississippi.

May 3, 1988.

Robert Q. Whitwell, U.S. Atty., Thomas W. Dawson, Alfred E. Moreton, III, Asst. U.S. Attys., Oxford, Miss., for plaintiff.

William O. Rutledge, III, New Albany, Miss., Stephen B. Shankman, Clifton and Shankman, Memphis, Tenn., for defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This cause is before the court on two of the defendants' motion to suppress certain evidence obtained in the search of the business offices of Kilgore Mining Company, Inc. ("Kilgore Mining"). Defendants David W. Judd ("Judd") and Robert N. Puett ("Puett") claim that part of the search was conducted without the proper authorization of a search warrant and that these business records should be suppressed. The government claims that these defendants lack standing to object to the search of corporate premises and the seizure of corporate records, that the warrant sufficiently described the place to be searched, that Judd consented to the search, and that the F.B.I. agents acted reasonably in executing the search warrant.

After conducting an evidentiary hearing on this matter and reviewing the briefs, exhibits, and the record as a whole, the court finds that defendants Judd and Puett lack standing to challenge the search and seizure of Kilgore Mining business documents, that the F.B.I. agents were acting pursuant to a valid warrant which sufficiently described the location and object of the search, that the F.B.I. agents acted within the bounds of the search warrant, and that they obtained and executed the search warrant reasonably and in good faith. The court therefore denies the defendants' motion to suppress.

*Findings of Fact*

The F.B.I. was conducting an investigation of Kilgore Mining in early 1986 when Wayne Tichenor ("Tichenor"), F.B.I. special agent, sought a search warrant to obtain certain business records from the offices of Kilgore Mining which were at 9172 Highway 51 North, Suite B, Southaven, Mississippi. Tichenor went before U.S. Magistrate Norman Gillespie in Oxford, Mississippi on May 12, 1986 to demonstrate probable cause and seek a search warrant for accounting and banking records thought to be located in the offices of Kilgore Mining on Highway 51 in Southaven, Mississippi. Tichenor presented an affidavit, precisely described the location of the search as "Kilgore Mining Co., Inc." and detailed the types of business records to be seized.

Tichenor obtained the needed search warrant at 10:25 a.m. in Oxford and proceeded to Highway 51 in Southaven to begin the search around 1:30 p.m. on May 12, 1986. The court takes judicial notice that the distance between Oxford and Southaven is approximately 70 miles and would take approximately one and one-half hours to travel by automobile. The search warrant authorized the F.B.I. agents to search the premises known as "Kilgore Mining Co., Inc., 9172 Highway 51 N., Suite B., Southaven, MS" and to seize "[a]ll business records and documents of Kilgore Mining Co., Inc.," and specified various business records expected to be found in the Kilgore Mining offices.

Upon arrival at the Kilgore Mining offices, Tichenor and the other F.B.I. agents identified themselves and presented a copy of the search warrant to Judd, who was present on the premises. The F.B.I. agents began searching the office suite at 9172 Highway 51 North, Suite B ("9172 offices"). The F.B.I. agents soon discovered that many of the important business records were no longer located at the 9172 offices. Tichenor approached defendant Judd, president and owner of Kilgore Mining, informed Judd that they were unable to find the bookkeeping and accounting records which they sought, and inquired where these records were. Judd responded by requesting his secretary to show the agents where these records were kept. Judd and his secretary then led Tichenor and the other agents out through the front entrance of the 9172 offices and to the next door which opened into a breezeway which led into Kilgore Mining's bookkeeping office ("9170 office").

After hearing the testimony and examining the exhibits, the court finds that the 9170 office was located approximately 25 to 30 feet from the front entrance of the 9172 offices and that they were part of the same office building. The 9170 bookkeeping office had a separate address but was considered part of the 9172 offices by the F.B.I. agents and even Judd himself at the time of the search. The F.B.I. agents used the 9172 address to describe the premises known as Kilgore Mining because that was the address used on various documents in their possession, that was the only address for Kilgore Mining known to the agents and their informant, and that was the only address discovered in their investigation of the location. Tichenor testified that he had investigated the Kilgore Mining offices' location by checking the city business license, bank records at a local bank, corporate filings with Mississippi's Secretary of State, and the letterhead on business stationary and found that each of these sources revealed the 9172 B address. In fact, Kilgore Mining had only recently leased the 9170 office and began to use this space as a bookkeeping office the last week of April, 1986. Tichenor had observed the front of the 9172 offices on two previous occasions but was unaware of the existence of the 9170 bookkeeping office off to the side of the 9172 office suite of Kilgore Mining.

After being led to the 9170 bookkeeping office, Tichenor and the other F.B.I. agents searched the premises and found the business records which they sought. Judd and his attorney were both present but made no objection at this point. Tichenor conceded that he probably saw the 9170 number on the glass door at the bookkeeping office but that he considered this office as part of the Kilgore Mining office suite.

Tichenor and the other F.B.I. agents only searched the Kilgore Mining offices located at 9172 and 9170 of the office plaza and only took business records specified in the search warrant. They did not search any other units at the United Plaza location.

Judd's personal office was located at the 9172 office suite along with a receptionist office, comptroller office, and large office area for salesmen. The bookkeeping office was very small in comparison and was used primarily by a bookkeeper and secretary-treasurer. Neither Judd nor Puett established that they worked out of the 9170 bookkeeping office although Judd was involved in the preparation of some of these documents found in the bookkeeping office.

The Kilgore Mining offices at 9172 and 9170 are not adjacent but are contained in the same building under the same roof. This is complicated by the fact that part of the building was an addition to a previously existing structure. However, the photographs and testimony make clear that the offices are connected and it is reasonable to consider the 9170 bookkeeping office as part of the Kilgore Mining office suite. Tichenor repeatedly testified that he considered the bookkeeping office a separate room of the Kilgore Mining offices although he recognized that the distance between offices could play a factor in whether an office unit should be considered a separate location.

The court notes that the distance between Southaven and Oxford, Mississippi would have made it difficult to drive back to Oxford to get a separate search warrant for the 9170 bookkeeping office. Tichenor testified that he is aware of preprinted documents of consent to search but that he did not have such a form available when the 9170 office was searched. Tichenor also testified that the magistrate prefers not to provide a search authorization by telephone and that telephone search warrants are not usually done.

### Conclusions of Law

The court will first consider the standing claims of defendants Judd and Puett before proceeding to the substantive challenges to the search warrant and the execution of the search warrant.

### I. Standing to Challenge Corporate Search and Seizure

Defendants Judd and Puett are attempting to challenge the search of Kilgore Mining's bookkeeping office and the seizure of corporate records. In order to have standing, the defendants must establish an individual privacy of property interest in the premises searched and thereby have a "reasonable expectation of privacy". *Williams v. Kunze*, 806 F.2d 594, 599 (5th Cir.1986); *United States v. Vicknair*, 610 F.2d 372, 379 (5th Cir.), *cert. denied*, 449 U.S. 823, 101 S.Ct. 83, 66 L.Ed.2d 25 (1980). The defendants bear the burden of establishing this privacy interest. *Rakas v. Illinois*, 439 U.S. 128, 130, note 1, 99 S.Ct. 421, 423–24, note 1, 58 L.Ed.2d 387, 393 (1978); *United States v. Hall*, 716 F.2d 826, 829 (11th Cir.1983), *cert. denied*, 467 U.S. 1251, 104 S.Ct. 3534, 82 L.Ed.2d 840 (1984). "Unless the shareholder, officer or employee can demonstrate a legitimate and reasonable expectation of privacy in the records seized, he lacks standing to challenge the search and seizure." *Williams*, 806 F.2d at 599. Neither Judd nor Puett have demonstrated that a privacy interest was violated or that they had personal items taken. The only documents seized were corporate bookkeeping and accounting records. As in *Williams*, the defendants "had no reasonable expectation of privacy in corporate records maintained in a common file room [bookkeeping office]." *Williams*, 806 F.2d at 600.

The defendants do not have "automatic standing" as they are not charged with any crimes involving possession of the items seized during the search. *Jones v. United States*, 362 U.S. 257, 264, 80 S.Ct. 725, 732, 4 L.Ed.2d 697, 704 (1960); *Vicknair*, 610 F.2d at 378. Likewise, the presence of Judd at the corporate office during the search is not sufficient to establish standing. *See Rakas v. Illinois*, 439 U.S. at 148, 99 S.Ct. at 433, 58 L.Ed.2d at 404. *Vicknair*, 610 F.2d at 379. "When corporate property is seized or searched, an indi-

vidual cannot assert the corporation's Fourth Amendment rights absent a showing that he had an independent privacy interest in the goods seized or the area searched." *Vicknair,* 610 F.2d at 379; *see also United States v. Bush,* 582 F.2d 1016, 1018 (5th Cir.1978).

■ Puett was not present when the search occurred and failed to sufficiently demonstrate that these documents were in fact prepared by Puett, that Puett used the bookkeeping area as a personal office, that Puett's personal belongings were disturbed by F.B.I. agents, that Puett was personally aggrieved in a significant way, or that this search was "directed at" Puett as an individual. Puett's self-serving testimony failed to demonstrate "a reasonable expectation of privacy." Puett was simply a corporate officer who signed certain bookkeeping documents and occasionally worked in the new bookkeeping office. Puett has failed to demonstrate a sufficient interest in either the premises or the documents involved in the case *sub judice.*

■ Judd is in a different position as the sole shareholder of Kilgore Mining but he also fails to establish standing. Even a corporate president and sole shareholder must establish an independent privacy interest in corporate documents to establish standing. *Vicknair,* 610 F.2d at 379; *United States v. Britt,* 508 F.2d 1052, 1055 (5th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 40, 46 L.Ed.2d 42 (1975); *Williams v. Kunze,* 806 F.2d at 597, 599. In *Britt,* the defendant was the president, but not the sole shareholder, and the court found that the documents seized were normal corporate records which were not prepared by the defendant, that they were not maintained in his personal office, and that the search was directed at the corporate activity generally and not at one individual person. Under those circumstances, the Fifth Circuit applied the following accepted rule:

> When a man chooses to avail himself of the privilege of doing business as a corporation, even though he is its sole shareholder, he may not vicariously take on the privilege of the corporation under the Fourth Amendment; documents which

he could have protected from seizure, if they had been his own, may be used against him, no matter how they were obtained from the corporation. Its wrongs are not his wrongs; its immunity is not his immunity.

*Britt,* 508 F.2d at 1055 (citing *Lagow v. United States,* 159 F.2d 245, 246 (2nd Cir. 1946), *cert. denied,* 331 U.S. 858, 67 S.Ct. 1750, 91 L.Ed. 1865 (1947)).

"Each case must be decided on its own facts" to determine whether a sufficient interest is established. *Henzel v. United States,* 296 F.2d 650, 653 (5th Cir.1961). Puett has certainly not established a "reasonable expectation of privacy" that would provide standing to challenge the search of a corporate bookkeeping office and the seizure of corporate documents. Judd failed to demonstrate to the court as an individual that he had a "reasonable expectation of privacy" in the corporate bookkeeping records of Kilgore Mining. "An individual's status as the sole shareholder of a corporation is not always sufficient to confer upon him standing to assert the corporation's Fourth Amendment rights." *Williams v. Kunze,* 806 F.2d at 599. Judd failed to establish a sufficient privacy interest in the normal business records of his corporation. However, as to defendant Judd, the court recognizes that the standing issue presents a close question and the court therefore finds it appropriate to proceed to the substantive challenges to the search and seizure even though the court holds that both Puett and Judd lack standing.

## II. Substantive Challenges to Corporate Search and Seizure

The defendants seek to suppress certain evidence intended to be used against them in a criminal trial. "The burden is on the movant to make specific factual allegations of illegality, to produce evidence, and to persuade the court that the evidence should be suppressed." *United States v. Evans,* 572 F.2d 455, 486 (5th Cir.), *cert. denied,* 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978); *see also United States v. De La Fuente,* 548 F.2d 528, 533 (5th Cir.), *cert.*

*denied,* 431 U.S. 932, 97 S.Ct. 2640, 53 L.Ed.2d 249, 434 U.S. 954, 98 S.Ct. 479, 54 L.Ed.2d 312 (1977). The exclusionary rule requires a court to suppress evidence which was gained in violation of the Fourth Amendment. Unless we forget, the Supreme Court recently clarified the purpose of the Fourth Amendment protections as follows:

> The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one "particularly describing the place to be searched and the persons or things to be seized." The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement insures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Thus, the scope of a lawful search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found...."

*Maryland v. Garrison,* 480 U.S. 79, ——, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72, 81 (1987). Against this backdrop, the court must determine the nature of the issues presented and the proper resolution of those issues in the case *sub judice.*

■ The central issue is whether the description in the search warrant is sufficient to include the Kilgore Mining offices at both 9172 and 9170 on Highway 51 north of Southaven, Mississippi. This case does not involve a warrantless search, a search without probable cause, or the mistaken search of the property of innocent persons. As in *Maryland v. Garrison,* "[t]he question is whether that factual mistake [in the description] invalidated a warrant that un-

doubtedly would have been valid if it had reflected a completely accurate understanding of the building's floor plan." *Maryland v. Garrison,* 480 U.S. at ——, 107 S.Ct. at 1017, 94 L.Ed.2d at 81.[1]

The Supreme Court's classic statement of the standard to be applied in examining the sufficiency of a warrant's identification of the place to be searched is as follows: "It is enough if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." *Steele v. United States,* 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757, 760 (1925). The Supreme Court reasoned that the "evidence left no doubt that, though the building had two numbers, the garage business covering the whole first floor and the storage business above, were of such a character and so related" that the search warrant authorized the search of both areas. *Steele,* 267 U.S. at 502, 45 S.Ct. at 416, 69 L.Ed.2d at 760. This landmark case clearly recognized that a misdescription of the object of the search, with the wrong street address, was insufficient to invalidate a search as unconstitutional when the protections afforded by the Fourth Amendment were not threatened.

The test is clearly one of reasonableness, and "[t]echnical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965). "The standard for determining whether a search warrant complies with Constitutional requirements is one of practical accuracy rather than technical nicety." *In re Motion to Quash,* 593 F.Supp. 184, 190 (S.D.W.Va.1984) (quoting *United States v. Gomez,* 42 F.R.D. 347 (S.D.N.Y.1967)).

The Fifth Circuit has repeatedly recognized that "a minor error in a portion of the

---

**1.** In *Maryland v. Garrison,* the description was too broad because of the mistaken belief there was only one apartment on the third floor of the location named in the warrant. In the case *sub judice,* the description was too narrow because the agents believed that the Kilgore Mining offices were together at the 9172 address. The

court should apply the same reasoning when an agent's misunderstanding results in either defining the location too precisely or not quite precisely enough. *See also United States v. Gusan,* 549 F.2d 15, 18 (7th Cir.), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977`

description of premises to be searched does not necessarily invalidate the search." *United States v. Darensbourg,* 520 F.2d 985, 987 (5th Cir.1975).

> The foregoing decisions illustrate the principle that the determining factor as to whether a search warrant describes the premises to be searched with sufficient particularity is not whether the description given is technically accurate in every detail but rather whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched which is not the one intended to be searched under the search warrant.

*Darensbourg,* 520 F.2d at 987 (quoting *United States v. Sklaroff,* 323 F.Supp. 296, 321 (S.D.Fla.1971)).

In *Darensbourg,* the Fifth Circuit held that a misdescription of the premises did not invalidate the search when the search warrant used the general business address of an apartment complex instead of the individual apartment. The *Darensbourg* court held that "there was little likelihood that the wrong premises would be searched —as indeed they were not." *Darensbourg,* 520 F.2d at 988. In a similar case the following year, the Fifth Circuit upheld the search of an adjacent separate apartment that was not expressly described in the search warrant. *United States v. Prout,* 526 F.2d 380, 387–388 (5th Cir.), *cert. denied,* 429 U.S. 840, 97 S.Ct. 114, 50 L.Ed.2d 109 (1976). Acknowledging the "physical layout of the premises and their use by" the defendants, the court held that the description was sufficient and that an unauthorized search would be unlikely. *Prout,* 526 F.2d at 388.

"If a warrant specifies a place under the designation by which it is commonly known, though the exact description may not be correct, the warrant will be upheld." *United States v. Palmer,* 667 F.2d 1118, 1120 (4th Cir.1981), *cert. denied,* 464 U.S. 817, 104 S.Ct. 76, 78 L.Ed.2d 88 (1983). In *Palmer,* the search warrant misdescribed a

business establishment in an office plaza just as in the case *sub judice.* Although the agents misunderstood the floor plan involved, there was no danger of searching the wrong premises and the search was upheld. In another closely analogous case, the location of the business intended to be searched changed prior to the execution of the search, but the entire search was upheld despite the innocent misdescription of the premises and the failure to include a description of the separate area in the search warrant. *United States v. Wright,* 468 F.2d 1184 (6th Cir.1972), *cert. denied,* 412 U.S. 938, 93 S.Ct. 2771, 37 L.Ed.2d 397 (1973). In *Wright,* a one story building was disconnected from the three-story lounge actually named in the search warrant by closing off a connecting passage way. The court found in those circumstances that the separate building with a separate entrance was included within the description of the primary structure and was properly searched pursuant to the search warrant issued.

Turning to the location and search warrant in the case *sub judice,* the court finds that the premises intended to be searched were the Kilgore Mining offices located on Highway 51 north of Southaven. The exact mailing address is only of consequence as it enables the F.B.I. agents to properly locate the Kilgore Mining offices. The F.B.I. agents misunderstood the floor plan of the Kilgore Mining offices but the minor mistake that resulted does not invalidate the search. The Supreme Court recently recognized the "need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." *Maryland v. Garrison,* 480 U.S. at ——, 107 S.Ct. at 1018, 94 L.Ed.2d at 82. The officers made a reasonable effort to ascertain and identify the place intended to be searched and their conduct was reasonable in light of the information available to them at the time they acted. *Maryland v. Garrison,* 480 U.S. at ——, ——, 107 S.Ct. at 1017, 1019, 94 L.Ed.2d at 81, 83. The Supreme Court has long recognized that a "common sense and realistic" approach is necessary in this area and has

counseled against a "grudging or negative attitude by reviewing courts toward warrants ..." *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965). *See also In re Motion to Quash,* 593 F.Supp. at 191.

The search was limited to the business offices of Kilgore Mining and the search of the 9170 office was conducted under the correct and reasonable belief that this office was part of the Kilgore Mining office suite. The record before the court is "devoid of even a hint of confusion concerning the correct premises to be searched. To the contrary, the officers executing the search warrant appeared to be able to easily locate the various offices listed in the search warrant, as well as persons with keys to the various offices who were willing to let the officers into the premises. Under these circumstances, the description of the premises to be searched was more than adequate to satisfy the applicable standard." *See In re Motion to Quash,* 593 F.Supp. at 190. The search could be upheld in these circumstances if the Kilgore Mining office suite had been completely misdescribed or if the entire business operation had been moved. The partial misdescription of the Kilgore Mining offices fails to invalidate this search.

■ Even if the court applied the most restrictive interpretation to the warrant and held that the search warrant only authorized the search of the 9172 office, the court would uphold the search because the agents acted reasonably and in good faith. The courts have admitted evidence seized in a search even though the warrant was later found to be invalid. This reasoning can be easily extended to this situation where the officers reasonably believed that the office was within the scope of the description in the warrant. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

The Fifth Circuit has held that a search warrant which only authorized the search of a residential dwelling "was sufficient to embrace the vehicle parked in the driveway on those premises." *United States v. Napoli,* 530 F.2d 1198, 1200 (5th Cir.) *cert.*

*denied,* 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed. 2d 287 (1976). More recently, the Fifth Circuit found that the warrant authorizing search of a residence was sufficient to allow the search of a vehicle parked off the street close to the home. *United States v. Freeman,* 685 F.2d 942, 955 (5th Cir.1982).

Other circuits have extended this principle. The First Circuit upheld a search of a large cabinet down the hallway from the entrance of the apartment described in the search warrant. *United States v. Principe,* 499 F.2d 1135 (1st Cir.1974). The court found that "the officers could reasonably suppose, given the ... layout and [the cabinet's] proximity to the apartment, that the cabinet was appurtenant to the apartment, as in fact it was." *Principe,* 499 F.2d at 1137. The District of Columbia Circuit upheld the search of a "free standing penthouse room, or hut, built out on top of the roof" when the object of the search warrant was a suite of offices located nearby. *United States v. Heldt,* 668 F.2d 1238, 1263 (D.C.Cir.1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982). The court found that the agents could reasonably believe that this isolated structure could constitute part of the suite of offices that were subject to the search warrant despite the "physical discontinuity of the [defendant's] suite and the [related] office." *Heldt,* 668 F.2d at 1263–1265.

The defendants argue that these were separate and distinct offices and that the warrant and probable cause went to the 9172 office and not the 9170 office. They support this argument with cases from other circuits which have excluded evidence because a warrant failed to precisely identify the building unit intended to be searched. If the officers know of the multi-unit character of a building, the officers must precisely identify the particular areas of the building they intend to search and establish probable cause as to those areas. *See e.g. United States v. Alexander,* 761 F.2d 1294, 1301 (9th Cir.1985); *Bates v. City of Fort Wayne,* 591 F.Supp. 711, 721 (N.D.Ind.1983). These cases involve search warrants that described the object of the search too broadly, whereas in the case *sub*

*judice* the search warrant contained a faulty description.

However, courts have expressly recognized an exception to the particular description usually required in a search warrant when the officers are unaware of the character of the structure. *Maryland v. Garrison*, 480 U.S. at ——, 107 S.Ct. at 1017, 94 L.Ed.2d at 81; *Bates v. Fort Wayne*, 591 F.Supp. 711, 721 (N.D.Ind.1983). This exception to the particularity requirement is available when the "multi-unit character of the premises is not known or apparent to the officers applying for and executing the warrant." *United States v. Whitney*, 633 F.2d 902, 907 note 3 (9th Cir.1980), *cert. denied*, 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 208 (1981). Typically, the officers are unaware of the multi-unit character of a structure to be searched instead of being unaware that more than one unit of a structure is being used by the suspect. The case *sub judice* is analogous, however, and the search should be upheld on this basis because the officers acted reasonably and in good faith on the information available to them. The defendants have offered "no evidence to support [their] contention that the agents knew of the multi-unit character of the premises." *U.S. v. Payden*, 613 F.Supp. 800, 816 (S.D.N.Y.1985), *aff'd*, 768 F.2d 487 (2nd Cir.1985). The agents were acting properly under the search warrant with the knowledge they possessed, and under these circumstances the search was not beyond the scope of the warrant. *See Maryland v. Garrison*, 480 U.S. at ——, 107 S.Ct. at 1017, 94 L.Ed.2d at 81.

As previously discussed, the Supreme Court has recently validated the execution of a search warrant that included the search and seizure of evidence contained in the wrong apartment. *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed. 2d 72. The Supreme Court recognized that the officers' mistake was understandable and the search was reasonable based on the facts available to the officers at that time. The defendants have failed to establish that the agents acted unreasonably in executing a valid warrant which authorized the search of Kilgore Mining offices. Even if the court accepts the argument that the warrant's description was inadequate to reach the 9170 office, the search of the 9170 office would be upheld as an exception to the general rule because of the limited knowledge and good faith of the officers and the reasonableness of the application for and execution of the search warrant.[2]

■ The government also argues that Judd consented to the search of the 9170 office. The government has the burden to prove the defendant's voluntary consent for a search without a warrant. *United States v. Mendenhall*, 446 U.S. 544, 557, 100 S.Ct. 1870, 1878, 64 L.Ed.2d 497, 511 (1980); *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed. 2d 797, 802 (1968). The court finds that defendant Judd accompanied the officers to the 9170 office but the discussions between Judd and the officers are very much in dispute. Although the court recognizes that consent need not be expressly given, the government must establish that Judd voluntarily consented to the search and did not simply acquiesce to the officers' authoritative request. *Schneckloth v. Bustamonte*, 412 U.S. 218, 223–227, 93 S.Ct. 2041, 2045–2048, 36 L.Ed.2d 854, 860–863 (1973); *Smith v. Rhay*, 419 F.2d 160, 163 (9th Cir.1969).[3] The court finds it unnecessary to determine the consent issue and will not rely upon the government's position on this issue in deciding this cause.

In summary, the description in the search warrant encompasses all the offices of Kilgore Mining at the location on High-

2. One must remember that the officers would have had probable cause to search the 9170 office but they were unaware of the related office initially and, upon discovering the office, believed the 9170 bookkeeping office was part of the suite of offices belonging to Kilgore Mining at the 9172 address.

3. The court notes that the prosecution is not required to demonstrate a subject's knowledge of his right to refuse consent before establishing voluntary consent. *United States v. Allison*, 616 F.2d 779, 783 (5th Cir.), *cert. denied*, 449 U.S. 857, 101 S.Ct. 156, 66 L.Ed.2d 72 (1980).

way 51 North in Southaven. The search warrant contained an adequate description of the place to be searched and the objects to be seized and this particular description of the premises "known as" Kilgore Mining satisfies the Fourth Amendment. Additionally, the officers acted reasonably and in good faith in obtaining and executing the search warrant. The defendants have failed to persuade the court that the evidence should be suppressed. Defendants Puett and Judd have also failed to establish standing to challenge the search of corporate offices and the seizure of corporate records. Therefore, the defendants' motion to suppress the evidence contained in Kilgore Mining's 9170 office is denied.

An order in accordance with this opinion will be issued this 3rd day of May, 1988.