NO. 12-02-00030-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS



GWIN H. LONG,
§
 APPEAL FROM THE 

APPELLANT


V.
§
 COUNTY COURT AT LAW OF


THE STATE OF TEXAS,

APPELLEE
§
 HENDERSON COUNTY, TEXAS






 Gwin H. Long ("Appellant") was charged with five counts of gambling offenses, including
gambling promotion, keeping a gambling place, and possession of gambling devices and
paraphernalia. The jury found her guilty of all five counts. The trial court assessed punishment at
sixty days in jail and a $5,000.00 fine. In her sole issue, Appellant asserts the trial court erred in
admitting certain evidence. We affirm.

Background

 Scott Wilson, an investigator with the Texas Attorney General's gambling task force,
participated in an undercover investigation of Appellant's business, Trains, during which he played
some eight-liner machines. After gathering sufficient information, Wilson drafted a lengthy affidavit
in support of a search warrant which authorized a search of Trains. The officers who executed the
warrant searched two train cars, a silver car and a red caboose that Appellant used as her residence.

 At trial, Wilson testified in great detail about playing some of the eight-liner machines
located in a silver train car on Appellant's property at 1075 Pritchett Lane, Seven Points, Henderson
County, Texas. He explained that a red caboose was next to the silver train car and when they
searched the caboose, the officers discovered business records and cash. At this point in the
testimony, counsel for the defense objected to the admissibility of the items seized from the caboose
on the basis that the search warrant authorized a search of the silver train car only. The trial court
heard argument from both sides outside the presence of the jury. Initially, the trial court agreed with
counsel for the defense and refused to admit any items seized from the red caboose. At the
conclusion of direct testimony by Wilson, the court recessed for the evening. The following
morning, the State reurged its position regarding admissibility of the items seized from the red
caboose. After argument from both sides, the trial court reversed its ruling and allowed the State to
admit all items seized from the caboose. 

 The search warrant authorized law enforcement officers to: 


 enter and search the said suspected place and premises, to wit: unnamed business known as "Train's",
1075 Pritchett Lane, Seven Points, Henderson County, Texas, . . . with the authority to search for and
seize implements, instruments, instrumentality's, [sic] proceeds and evidence used in the commission
of the offenses of Gambling Promotion, Keeping a Gambling Place, Possession of a Gambling Device
and Possession of Gambling Paraphernalia.


 The affidavit supporting the warrant was incorporated into the warrant for all purposes and
stated:


 1. THERE IS IN SEVEN POINTS, HENDERSON COUNTY, TEXAS, A SUSPECTED
PLACE AND PREMISES DESCRIBED AND LOCATED AS FOLLOWS:


 An unnamed business establishment known locally as Train's is located at 1075
Pritchett Lane, Seven Points, Henderson County, Texas. The structure is a silver
in color passenger train car. The passenger train car is located north, 8/10 of a mile
from State Highway 334 on the west side of Pritchett Lane, Seven Points,
Henderson County, Texas. In front of this silver in color passenger train car is a
black mail box located on the west side of Pritchett Lane with the numbers "1075". 
This is the only silver in color passenger train car located on Pritchett Lane 8/10 of
a mile north of State Highway 334, Seven Points, Henderson County, Texas.


The affidavit stated that "at said suspected place and premises," evidence, including "any and all
business records and documentation pertaining to the unnamed business 'Train's,'" was to be seized
and taken into custody.

Scope of Warrant

 In her sole issue, Appellant asserts the officers exceeded the scope of the search warrant by
searching the red caboose which she was using as her residence. She argues that the warrant was
limited in scope to her business, Trains, which was described in the affidavit as a "silver in color
passenger train car." Noting that neither the warrant nor its supporting affidavit make reference to
any other structures on Appellant's property, Appellant asserts there is no evidence suggesting the
red caboose was associated with any gambling-related activity.

Applicable Law

 We review a court's ruling on the admissibility of evidence under an abuse of discretion
standard. Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). We will not reverse such
a ruling so long as it falls "within the 'zone of reasonable disagreement.'" Id. at 102 (quoting
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). "When a
criminal defendant claims the right to protection under an exclusionary rule of evidence, it is his task
to prove his case." Rogers v. United States, 330 F.2d 535, 542 (5th Cir.), cert. denied, 379 U.S. 916,
85 S. Ct. 265, 13 L. Ed. 2d 186 (1964). 

 A search is unreasonable and violates the protections of the Fourth Amendment if it exceeds
the scope of the authorizing warrant. U.S. Const. amend. IV; Long v. State, 532 S.W.2d 591, 596
(Tex. Crim. App. 1975). While the scope of the search warrant is governed by its terms, the search
may be as extensive as is reasonably required to locate items described in the warrant. See Haynes
v. State, 475 S.W.2d 739, 741-42 (Tex. Crim. App. 1971). Search warrants and affidavits should
be considered in a common sense manner, and hypertechnical readings should be avoided. See
Spinelli v. United States, 393 U.S. 410, 419, 89 S. Ct. 584, 591, 21 L. Ed. 2d 637 (1969). If a
warrant specifies a place under the designation by which it is commonly known, though the exact
description may not be correct, the warrant will be upheld. United States v. Palmer, 667 F.2d 1118,
1120 (4th Cir. 1981), cert. denied, 464 U.S. 817, 104 S. Ct. 76, 78 L. Ed. 2d 88 (1983).

 Both the warrant and its supporting affidavit used the phrase "place and premises" followed
by an address and a description of Appellant's place of business. The Texas Court of Criminal
Appeals has explained that


 [t]he term "premises" has, in legal parlance, a meaning so broad and varied that its interpretation in
a given case is to a great extent governed by the context; that is to say, the manner of its use in the
connection found tends to portray the intent with which it was embraced in the document.


Comeaux v. State, 118 Tex. Crim. 223, 228-29, 42 S.W.2d 255, 258 (Tex. Crim. App. 1931) (op.
on reh'g). In Comeaux, a warrant to search "a certain place and premises" at a specified address was
held to include a detached garage on the same lot as the defendant's residence. Id. The same
language has been held to allow the search of a doghouse thirty to forty-two feet from the residence. 
Bess v. State, 636 S.W.2d 9, 10 (Tex. App.- Corpus Christi 1982, pet. ref'd, untimely filed). In
Seale v. State, 118 Tex. Crim. 324, 39 S.W.2d 58 (Tex. Crim. App. 1931), that reasoning was
applied to the language of a warrant authorizing the search of a business comprising a filling station
and a detached garage. In approving the search, that court held that the description, "a certain place,
building and premises" being used by the defendant, included the detached garage. Id. at 59. The
Fifth Circuit followed this reasoning when it concluded that the search of a detached garage was
within the scope of a warrant that authorized the search of the premises described as "a certain
building, house or place of" the defendant. United States v. Moore, 743 F.2d 254, 256 (5th Cir.
1984). 

 Other jurisdictions have reached the same conclusion. See United States v. Earls, 42 F.3d
1321 (10th Cir. 1994), cert. denied, 514 U.S. 1085, 115 S. Ct. 1800, 131 L. Ed. 2d 727 (1995)
(Warrant authorizing search of premises at specified address and giving description of residence held
to include detached garage, shed, and office at that location.); United States v. Griffin, 827 F.2d
1108 (7th Cir. 1987), cert. denied, 485 U.S. 909, 108 S. Ct. 1085, 99 L. Ed. 2d 243 (1988)
("Premises" particularly described and located at stated address included the yard and toolshed.);
United States v. Bonner, 808 F.2d 864 (1st Cir. 1986), cert. denied, 481 U.S. 1006, 107 S. Ct. 1632,
95 L. Ed. 2d 205 (1987) (Where warrant included an attachment containing a description of
"properties" to be searched, and corrected warrant included address, "properties" held synonymous
with "premises" and therefore the warrant embraced detached garage on the property.); Oregon v.
Showalter, 894 P.2d 504 (Or. Ct. App. 1995) (Warrant for "premises" at particular address included
a disabled truck in the yard.); Barton v. Georgia, 288 S.E.2d 914 (Ga. Ct. App. 1982) (Warrant
authorizing search of described "premises" at particular address included outbuildings not
specifically described.); People v. Muniz, 597 P.2d 580 (Colo. 1979) (Warrant supported by affidavit
identifying "premises" at a particular address included a shed in the backyard.).

 Based on an interpretation of the "place and premises" language in the warrant, the fact that
the silver train car and the red caboose were two separate structures and not physically connected
does not lead us to conclude that the red caboose was not included in the scope of the search warrant. 
We note that the majority of the cases construing the "place and premises" language involve searches
of residences. Therefore, we turn now to cases presenting discussions of the scope of warrants to
search businesses. 

 In United States v. Heldt, 668 F.2d 1238 (D.C. Cir. 1981), the court considered the scope of
a warrant authorizing a search of "the suite of offices of Mr. Henning Heldt." The warrant described
the location of his office within the building, but not the extent of the "suite." Officers searched a
freestanding penthouse room, or hut, built on top of the roof, nine feet away from the defendant's
office windows, and accessible through his office, that was later identified as being another
individual's office. Considering its location and accessibility from the defendant's office, the court
held that it was reasonable for officers executing the warrant to believe that room was part of the
defendant's office suite. Id. at 1263-66. 

 In United States v. Judd, 687 F. Supp. 1052 (N.D. Miss. 1988), aff'd, 889 F.2d 1410 (5th
Cir. 1989), the search warrant authorized a search of the premises known as Kilgore Mining
Company, which was located at a specifically named address. Officers were to seize all of the
company's business records and documents. At the time of the search, when asked the location of
bookkeeping and accounting records, the defendant led the officers out through the front entrance
of his company's office and to the next door that opened into a breezeway which led into Kilgore
Mining Company's bookkeeping office. The bookkeeping office was physically located at a separate
address from that listed on the warrant. Noting that the officers were only aware of one address and
the two offices were part of the same building, the court held that it was reasonable to consider the
bookkeeping office as part of the business's office suite and therefore covered by the warrant. Id.
at 1059. 

 A California court upheld the search of an immobile van located at the defendant's place of
business based on a warrant authorizing a search of a warehouse at a particular address "occupied
by Hart Trucking Company, and appurtenances." People v. Fitzwater, 260 Cal. App. 2d 478, 483,
cert. denied, 393 U.S. 953, 89 S. Ct. 378, 21 L. Ed. 2d 364 (1968). The court reasoned that the entire
lot was a single integral unit under the defendant's control. Id. at 488. In People v. Duskin, 380
N.Y.S.2d 895 (N.Y.D.C. 1976), the search warrant authorized a search of Jet Aerosol Corporation,
located in a particular room at a specified address. The defendant led officers to a different room
to search. The court cited to case law stating that the intent and direction of a warrant is to authorize
a search of as much of the premises as was occupied by the corporation to be searched. Id. at 899. 
Although the warrant was very specific and the room searched was not identified in the warrant, the
court upheld the search as being within the scope of the warrant. Id.

Discussion 

 After reviewing relevant case law, we conclude that the search warrant was properly
construed as authorizing a search of the red caboose. Separate structures located on "premises"
identified in the warrant can be included in the scope of the warrant. See Comeaux, 42 S.W.2d at
258. The warrant identified the "premises" and provided an exact street address. Although
Appellant attempted to argue that the red caboose had a separate street address, she did not provide
proof of that assertion. Moreover, Wilson searched county tax records and determined that
Appellant's land was assigned only one address. Further, a separate street address is not necessarily
determinative and all circumstances must be considered. See Judd, 687 F. Supp. at 1059. The fact
that Appellant was also using the caboose as her residence does not alter our view. Officers had no
indication that the caboose was a residence prior to entering it. The caboose was located less than
thirty feet from the silver train car. Appellant was exiting the caboose when law enforcement
officers arrived to execute the warrant, verifying her connection to the caboose. The land belonged
to Appellant, and the silver train car and red caboose were under her control. See Fitzwater, 260
Cal. App. at 488.

 Specific mention of the silver train car in the warrant does not limit the scope of the search.
See Griffin, 827 F.2d at 1115. The warrant's intent was to authorize a search of as much of the
"premises" as was occupied by the business known as "Trains." See Duskin, 380 N.Y.S.2d at 899. 
The silver train car housed twenty machines and was open to the public. It is reasonable to suspect
the business records for "Trains," Appellant's business, were not located in the same room as the
machines. See Griffin, 827 F.2d at 1115. The record indicates there were other structures on the
lot but only the train cars were searched. The officers' conduct was reasonable in light of the
information available to them at the time they acted. See Judd, 687 F. Supp. at 1058-59. It was
reasonable, and as it turned out, correct, for the officers to believe that the red caboose was part of
the business. The trial court was correct in determining that the description in the warrant
encompasses both the silver train car and the red caboose, which were located adjacent to one
another on Appellant's property. The warrant did not leave so much to the discretion of the officers
that it can be said the warrant authorized an unbounded general search in violation of the
particularity requirement. See Bonner, 808 F.2d at 868. 

 An exception to the rule excluding evidence obtained in violation of the constitution or laws 

applies when evidence is obtained by a law enforcement officer acting in objective good faith
reliance upon a warrant issued by a neutral magistrate based on probable cause. Tex. Code Crim.
Proc. Ann. art. 38.23(b) (Vernon Supp. 2003). These requirements were met here. Wilson testified
that the "warrant called for the search of the buildings on that property," not just the train car where
the eight-liners were located. All structures on the property shared one address. There is nothing
in the record to indicate the officers knew at the time of the search, or could have reasonably
anticipated, that Appellant used the caboose as her residence. Therefore, even if the officers had
exceeded the scope of the warrant, the evidence from the red caboose would be admissible under the
good faith exception. See Earls, 42 F.3d at 1327; Judd, 687 F. Supp. at 1059. 


Conclusion

 Appellant has not met her burden to show the trial court abused its discretion when it
admitted the evidence seized from the red caboose. We overrule Appellant's sole issue. 

 We affirm the trial court's judgment.


 JAMES T. WORTHEN 

 Chief Justice

 


Opinion delivered May 14, 2003.

Panel consisted of Worthen, C.J. and Ramey, Jr., Retired Chief Justice, Twelfth Court of Appeals, Tyler, sitting by
assignment.

Griffith, J., dissenting.



 I respectfully dissent. I would hold the search exceeded the parameters permitted by the
search warrant, and improperly intruded into the residence of Appellant without an authorizing
search warrant, and, therefore, evidence obtained in the search of Appellant's residence should have
been excluded from Appellant's trial.

 In the course of his undercover investigation of Appellant's business, Trains, Scott Wilson
played eight-liner machines and gathered other evidence that Appellant was using her silver railroad
car for gambling purposes. Wilson's affidavit, supported by, and consistent with, the evidence he
gathered in his investigation, specifically described the structure in which he had seen gambling
activity as "a silver in color passenger train car." Although there was also a red caboose on the
premises, no mention of the red caboose was made in either the affidavit in support of the search
warrant or in the search warrant. The evidence at the hearing on the admission of records taken from
the red caboose, and the evidence during the trial clearly established that the officers knew, and both
the State conceded and Appellant contended, the red caboose was Appellant's residence.

 The affidavit for the search warrant noted that "unnamed business establishment known
locally as Train's is located at 1076 Pritchett Lane, Seven Points, Henderson County, Texas. The
structure is a silver in color passenger train car." Three times in the paragraph describing and
locating the premises, the affiant, Wilson, specifically described the place and premises as a silver
passenger train car, and once as only "[t]he passenger train car." The final description definitively
noted that "[t]his is the only silver in color passenger train car located on Pritchett Lane. . . ."


 The Fourth Amendment of the United States Constitution provides:


 The right of the people to be secure in their person, houses,
papers, and effects, against unreasonable searches and seizures,
shall not be violated, and no Warrants shall issue, but upon
probable cause, supported by Oath or affirmation, and
particularly describing the place to be searched, and the persons
or things to be seized.


U.S. Const. amend. IV. The Texas Constitution states:

 The people shall be secure in their persons, houses, papers and
possessions, from all unreasonable seizures or searches, and no
warrant to search any place, or to seize any person or thing, shall
issue without describing them as near as may be, nor without
probable cause, supported by oath or affirmation.


Tex. Const. art. I, § 9.

 The United States Supreme Court has consistently given homes heightened protection from
search and seizure. In Payton v. New York, the Supreme Court wrote:


 The Fourth Amendment protects the individual's privacy in a variety of settings. 
In none is the zone of privacy more clearly defined than when bounded by the
unambiguous physical dimensions of an individual's home - a zone that finds its
roots in clear and specific constitutional terms: "The right of the people to be secure
in their . . . houses . . . shall not be violated." That language unequivocally
establishes the proposition that "[a]t the very core [of the Fourth Amendment]
stands the right of a man to retreat into his own home and there be free from
unreasonable government intrusion." Silverman v. United States, 365 U.S. 505,
511, 81 S. Ct. 679, 683, 5 L. Ed. 2d 734. In terms that apply equally to seizures of
property and to seizures of persons, the Fourth Amendment has drawn a firm line
at the entrance to the house.


Payne v. New York, 445 U.S. 573, 590, 100 S. Ct. 1371, 1382, 63 L. Ed. 2d 639 (1980); see also
Kyllo v. United States, 533 U.S. 27, 34, 121 S. Ct. 2038, 2043, 150 L. Ed. 2d 94 (2001) ("in the case
of the search of the interior of homes - the prototypical and hence most commonly litigated area of
protected privacy - there is a ready criterion, with roots deep in the common law, of the minimal
expectation of privacy that exists, and that is acknowledged to be reasonable.")(emphasis in
original).

 Had Wilson wanted to search the red caboose, which was established as being known as
Appellant's residence, he had only to include sufficient information in his affidavit to establish
probable cause to search the Appellant's residence, the red caboose, and, based on that probable
cause affidavit, to obtain a search warrant for the red caboose, duly signed by the reviewing
magistrate. (1) Wilson's affidavit contains no suggestion of any criminal activity in any other building
located at1076 Pritchett Lane, Seven Points, Henderson County, Texas. Rather, the facts contained
in his affidavit explicitly specified only the silver colored passenger rail car.

 As the affidavit in support of the search warrant allowed the officers to only search the silver 
passenger rail car, the search of Appellant's residence, the red caboose, which was a separate
building (2), was beyond the scope of the search authorized by the search warrant. Article 38.23 of the
Texas Code of Criminal Procedure provides that "[n]o evidence obtained . . . in violation of any
provisions of the Constitution or law of the State of Texas, or of the Constitution or laws of the
United States of America, shall be admitted in evidence against the accused on the trial of any
criminal case." Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon Supp. 2003).

 The evidence having been obtained during the search of Appellant's home was beyond the
scope of the search warrant and should have been excluded from the trial.



 SAM GRIFFITH 

 Justice




(PUBLISH)




 



 
1. "The point of the Fourth Amendment . . . is not that it denies law enforcement officers the support of the
usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences
be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often
competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's
disinterested determination to issue a search warrant will justify the officers in making a search without a warrant
would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police 

officers. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law 

allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a 

grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom
from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided
by a judicial officer, not by a policemen or Government enforcement agent." Johnson v. United States, 333 U.S.
10, 13-14, 68 S. Ct. 367, 369, 92 L. Ed. 436 (1947) (footnotes omitted).
2. That Appellant's residence, the red caboose, was a separate building is a very salient factor in evaluating
the scope of the search permitted under the search warrant. Where a building is the subject of a search warrant, and
a defendant claims a portion of the building to be his residence, greater latitude is permitted the officers executing
the search. See Amir v. State, 45 S.W.3d 88 (Tex. Crim. App. 2001).