Henry J. Kalinowski, J.
The defendant moves to controvert the warrant to search and seize on the grounds that the warrant is vague in that it does not "particularly” describe the "things to be seized,” and further that there was no probable cause to believe that a crime was being committed or was about to be committed.
In seeking to suppress the articles seized defendant further alleges that the actual search exceeded the area specifically set forth in the warrant.
After a hearing the court finds that the affidavit submitted in support of the warrant states in substance that Detective Campanella of the Nassau County Police on August 15, 1973, purchased six metal canisters labeled "Guardian” from the F & S Discount Store in Uniondale, New York.
On each canister appeared the legend, "Immediately renders attacker harmless when sprayed directly into face of assailant.” That on the following day the content of these canisters was tested by the department’s scientific investiga *841 tion bureau and it was found that each contained oleo resin capsicum, a form of CS-Type tear gas which is irritating to eyes, nose and throat, thus a noxious material.
On September 18, 1973, and on October 9, 1973, other purchases of the same label were made at the same location, and a sample testing confirmed the presence of oleo resin capsicum.
It was learned from one Hertz, at the F & S Discount Store, by the purchasing officers, that to order the aerosol canisters, he (Hertz) would call the Jet Aerosol Corporation at telephone number 466-3910 and place the order with an individual known to him as Robert Duskin (the defendant herein). Further investigation revealed that Robert B. Duskin "operated” Jet Aerosol Corporation located in Room 302 on the third floor at premises 17 Station Plaza East, Incorporated Village of Great Neck Plaza in Nassau County.
A recorded conversation between Hertz and Duskin concerning a purchase of this merchandise is also before the court.
On the strength of the affidavit reciting the above facts a warrant issued on the 11th of October, 1973, and commanded, "an immediate search of Jet Aerosol Corporation located in Room 302 on the third floor of 17 Station Plaza East, Incorporated Village of Great Neck Plaza, Nassau County, New York, for canisters of noxious material and noxious material.” (Emphasis supplied.)
The warrant was executed on October 11, 1973, at approximately 2:45 p.m., and the return duly filed with the court.
At the hearing Detective Campanella and Detective Miller testified that they viewed the main building at sometime prior to October 11, noting at that time that the building directory contained the name "Jet Aerosol Corporation” or "Jet Manufacturing Corporation” and opposite this appellation was the legend "Room 302.” Detective Miller at this time went up to Room 302 to make a cursory observation of this area.
On the 11th of October the said detectives entered Room 302 and were advised by the receptionist that the defendant was not in, but that he was expected shortly. The officers waited in the main corridor immediately outside Room 302. Upon the arrival of the defendant, he was advised of the search warrant and of his constitutional rights. After reading the warrant, the defendant allegedly stated in substance, "come on down, I have no objection to a search.”
*842 The officers then followed the defendant down an L-shaped corridor for a distance of approximately 100 feet to Room 310. This area was subdivided into two offices with separate but undesignated doorways known to the defendant as Rooms 310A and 310B. There is no ingress from Room 302 to Room 310. Upon entry to Room 310A the officers searched two filing cabinets and the desk found therein, and seized 48 canisters allegedly containing noxious material, and labeled as follows: 12 canisters labeled, "Mini-Jet Foil Attack,” 2 — "Guardian,” 9 —"Kristee Defender of Women,” 2 — "Mini-Jet Dog-Gone,” 1— "Body Guard,” 6 — "Halt,” 1 — "Kristee Dog Repellant,’’ and 15 canisters not labeled.
Whereupon the defendant Robert Duskin was arrested for violation of subdivision 2 of section 270.05 of the Penal Law.
It is contended that the warrant is constitutionally deficient in that the articles to be seized are not particularized, and that no probable cause existed from which it could be inferred that a crime was being committed or was about to be committed, as section 270.05 of the Penal Law does not prohibit the sale and/or manufacture of noxious material.
It is further contended that the detectives were limited to a search of Room 302, and that at most they were constrained to seize only those canisters carrying the label, "Guardian.”
It was held in People v Hendricks (45 Misc 2d 7) (see, also, People v Hendricks, 30 AD2d 640, revd 25 NY2d 129), that where the search warrant specifies contraband, though only through the medium of a penal section, and the supporting affidavit describes what the contraband is, the two of them may be read together to determine what is, in fact, covered by the search warrant, and what therefore may be searched for and seized.
It was also held (citing Johnson v United States, 293 F2d 539, cert den 375 US 888), that an officer engaged in a lawful search is not restricted to seizing only those items described in the warrant, but may, in addition, seize unlisted items which are clearly the instrumentalities of crime. (See, also, People v Moss, 34 AD2d 986; People v Reinhardt, 42 Misc 2d 45.)
From the descriptive labels on the canisters seized, i.e., "Foil Attack”, "Defender of Women”, "Halt”, "Dog Repellent,” etc., the officers could reasonably assume that each contained a noxious substance as found in the "Guardian” canisters. At what point items become "clearly instrumentali *843 ties of crime” must, of necessity, depend on the police officer’s knowledge, expertise and experience. Accordingly, the warrant may not be controverted and the labeled items suppressed, on the grounds of vagueness and a lack of particularization. The 15 unlabeled canisters cannot be said to fall within the above category and are suppressed.
As hereinabove mentioned, the warrant authorized a search and seizure of "Jet Aerosol Corporation located in a four-story brick building located in Room 302 on the third floor of 17 Station Plaza East”. In searching Room 310A, did the police officers exceed the permissible area, and in view of the circumstances was the warrant constitutionally deficient for not particularly describing the place to be searched? I think not.
In People v Rainey (14 NY2d 35), it was held that a warrant was constitutionally deficient for not particularly describing the place to be searched, but there the defendant resided in only one of two separate residential apartments at the address, here defendant occupied both rooms even though Room 302 was shared in common with others.
The obvious intent and direction of a warrant is to authorize a search of as much of the premises as was occupied by the corporation. (People v Johnson, 49 Misc 2d 244). There was no confusion in the mind of the defendant as to what premises were to be searched, for after reading the warrant he stated, "Come on down, [to Room 310A] I have no objection to a search,” and as in People v Horton (32 AD2d 707), the defendant took the police to Room 310A, making no claim that it was a separate enclosure.
As to the last remaining issue, subdivision 2 of section 270.05 of the Penal Law reads as follows: "Unlawfully possessing noxious material * * * 2. A person is guilty of unlawfully possessing noxious material when he possesses such material under circumstances evincing an intent to use it or to cause it to be used to inflict physical injury upon or to cause annoyance to a person, or to damage property of another, or to disturb the public peace.”
The California Legislature in 1953, enacted a similar statute, which reads: "Any person, firm, or corporation who within this state knowingly sells or offers for sale, possesses, or transports any tear gas weapon, except as permitted under the provisions of this chapter, is guilty of a public offense and upon conviction thereof shall be punished by imprisonment in the state prison not to exceed two years or by a fine not to *844 exceed two thousand dollars ($2,000), or by both.” (California Penal Code, § 12420.)
It becomes apparent after a comparison of the two statutes that section 270.05, has been drawn along narrow lines and does not permit the inclusion of a manufacturer or wholesale distributor within its present language. If its scope is to be expanded, this task is for the Legislature and not the courts.
Here the investigating police officers knew or should have known that the Jet Aerosol Corporation was either a manufacturer and/or a wholesale distributor of the proscribed noxious material. Such possession can hardly evince an intent to use it or to cause it to be used to inflict physical injury, for even the phrase, "cause it to be used,” would imply an overt act at an unpropitious time, and since the manufacture and sale of this material is not prohibited, there could be no probable cause to believe a crime was or was about to be committed.
The court is mindful of subdivision 3 of section 270.05, wherein possession of noxious material is presumptive evidence of intent to use or cause it to be used in violation of said section. Richardson on Evidence (10th ed, § 55) defines presumption, "as a rule of law 'which requires that a particular inference must be drawn from an ascertained state of facts’ * * * The inference is mandatory once the 'basic fact,’ the fact which gives rise to the presumption, is established on the trial. ” (Emphasis supplied.)
In section 58 it is stated, "[a]s a general rule, the effect of a presumption is to place the burden upon the adversary to come forward with evidence to rebut the presumption; that is, to negative the existence of the presumed fact * * * Whether the presumption has been overcome is ordinarily a question for the court.” It further appears that only where rebuttal evidence presents an issue of credibility, does it fall into the province of fact for a jury.
Here the supporting affidavit and the evidence clearly and unequivocally establish that the corporation of which the defendant is president, was a wholesaler of the noxious material, thus the inference from these ascertained facts can only be that there was no intent to use or cause it to be used in violation of this section. Thus where it is obvious from the facts that a statutory presumption cannot be inferred, the People may not preserve for trial that which never came into being.
*845 The motion to controvert is granted and the physical evidence suppressed.