**UNITED STATES of America,
Appellant,**

v.

**Stanley Seymour PALMER and Stephen Alexander Price, Appellees.**

**No. 81–5061.**

United States Court of Appeals,
Fourth Circuit.

Argued Aug. 5, 1981.

Decided Dec. 23, 1981.

Rehearing Denied Jan. 20, 1982.

Sidney M. Glazer, Dept. of Justice, Washington, D. C. (Henry M. Michaux, Jr., U. S. Atty., Durham, N. C., on brief), for appellant.

---

**4.** *See* note 2, *supra.*

**5.** *See, e.g.,* Fed.R.App.P. 30 and 32.

Eddie C. Mitchell and William L. Cofer, Winston-Salem, N. C., for appellees.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

WIDENER, Circuit Judge:

This is an interlocutory appeal from the order of the district court, 505 F.Supp. 812, granting the motions of defendants to suppress evidence seized pursuant to search warrants. The whole question presented is whether the search warrants particularly described the place to be searched, as required by the Fourth Amendment. The defendants ask us to hold that the search was conducted on premises other than those described in the search warrant, i.e., "Carl's Carpet Mart." We reverse.

On October 27, 1980, appellees Stanley S. Palmer and Stephen A. Price, along with seven others, were indicted for carrying on an illegal bookmaking business and for using the interstate telephone system to obtain information used in receiving and placing bets on sporting events, in violation of 18 U.S.C. §§ 1955, 1952(a)(3) and 1084(a). The indictments followed an extensive F.B.I. investigation, which culminated in the execution of the search warrants in question against the several defendants in December 1979.

At issue in this appeal are the two warrants to search Palmer and Price and Carl's Carpet Mart on December 14, 1979 and executed on December 16, 1979. The warrants authorized a search of the persons of Palmer and Price "at Carl's Carpet Mart, Inc., New Lexington Road, Route 11, Box 246, Winston-Salem, North Carolina" and the premises of Carl's Carpet Mart, Inc., at the same address. No further description was given on the face of the warrants. The warrants were issued by a United States Magistrate on the basis of the affidavit of Special Agent Schatzman, who had conducted the F.B.I. investigation.

The affidavit, 34 typed pages in length, sets out probable cause to search in detail and abundance. It asserts that the F.B.I. had learned through informants of the bookmaking activities of Palmer and Price during the summer of 1978. Between August 28, 1979 and December 6, 1979, various unnamed informants advised F.B.I. agents that Palmer and Price were conducting their bookmaking business over telephone numbers 764–4900 and 764–4901. Records of Southern Bell Telephone Company showed that these two telephones were billed to Carl's Carpet Mart, as were two other telephones. Toll records for these phones for August through November 1979 revealed several hundred calls to other suspected participants in the bookmaking operation, as well as numerous calls to sports information services in New York and Los Angeles.

The F.B.I. conducted spot checks of the suspected bookmaking operations between October 23, 1979 and December 9, 1979. Carl's Carpet Mart is located at one end of an L-shaped shopping center, containing three other business premises. On the roof over Carl's Carpet Mart is a large sign stating the name of the establishment. That store has three sets of double doors in front. Adjacent to Carl's Carpet Mart are premises the front part of which had been formerly occupied by Miller-Arrington appliance store. The name "Miller-Arrington" is written on the glass above the entrance, which is the fourth set of double doors from the left. The showroom area of those premises was rented by Lacey Miller at the time the warrants were executed. He conducted periodic antique auctions there. From the public area of Carl's Carpet Mart and the outside of the Miller-Arrington premises, an unbroken plywood panel partition between the two premises was visible which extended from the front of the building to about two-thirds the way to the back. A private area containing restrooms was located at the rear of Carl's Carpet Mart, obscuring the remainder of the interior plywood partition from the view of agents conducting the surveillance. Similarly, the rear of the Miller-Arrington premises was partitioned off into private offices. Price paid the rent on those premises as well as reimbursing the considerable telephone bill to Carl's Carpet Mart.

On several occasions during the surveillance period, Agent Schatzman observed Price and Palmer entering or leaving the Miller-Arrington premises. They always used the fourth set of double doors from the left. Schatzman testified at the hearing on the motion to suppress that he had never observed either Price or Palmer use any of the first three sets of double doors on the left, but always the fourth.

When F.B.I. agents, including Schatzman, executed the search warrants at issue, they entered through the doors with "Miller-Arrington" written on them, the fourth set of doors from the left which Price and Palmer had used. They searched the enclosed area at the back of the premises, that which was rented by Price, which consisted of several cubicles. The telephones bearing numbers 764–9000 and 764–9001 were both found in the back cubicles. The agents found no door connecting those premises with those of Carl's Carpet Mart. The agents did not search elsewhere.

After the search was conducted, returns on the warrants were made, listing the items seized. A separate return was made for each search of the person as well as one for the premises. Following the list of items seized on the return for "these premises" was the following statement:

This is to certify that on December ·16th 1979 at Davidson Co. North Carolina, Special Agents of the Federal Bureau of Investigation, U. S. Department of Justice, at the time of conducting a search of the [...][1] premises at Carls Carpet Mart, obtained the listed items. I further certify that the above represents all that was obtained by Special Agents of the Federal Bureau of Investigation, U. S. Department of Justice.

(Signed) [s] Stanley S. Palmer
(Signed) [s] S. A. Price

1. The word "or" has been omitted in copying, it obviously having not been marked through by mistake.

1. The agents thought that the stores were connected because the telephones located in the Miller-Arrington store were listed in the name

In addition, Price and Palmer each signed a statement on the return to the search warrant for his person in almost identical language to that just quoted above. That of Price described the premises as "Carl's Carpet Mart," while that of Palmer described them as "Carl's Carpet."

██ Signing the statements on the returns which specified the premises searched as being those of Carl's Carpet Mart is an admission by Price and Palmer that the search took place on the premises authorized in the search warrants. The statements are uncontroverted evidence that they regarded the premises they occupied in their bookmaking operation as indeed being a part of Carl's Carpet Mart. We decline to hold that the premises searched were not those described in the warrant when the defendants themselves obviously regarded them as the same. If a warrant specifies a place under the designation by which it is commonly known, though the exact description may not be correct, the warrant will be upheld. See *United States v. Wright*, 468 F.2d 1184 (6th Cir. 1972).

The order of the district court is accordingly

REVERSED.

K. K. HALL, Circuit Judge, dissenting:

The agents in this case searched the Miller-Arrington store even though the warrant authorized them to search only Carl's Carpet Mart. The majority overlooks this discrepancy because the defendants signed warrant returns in which they noted that the search was conducted at Carl's Carpet Mart. I cannot attach this much importance to a layman's signature upon the return of a search warrant, and therefore, I respectfully dissent.

The physical layout of the two stores gives no reason to believe that they are one and the same.[1] Although adjacent in a small shopping center, the stores are sepa-

of "Carl's Carpet Mart," and because the defendants paid rent to Carl's. The agents' suspicions simply will not support this warrant. Common ownership and phone listings prove nothing. *See, United States v. Kaye*, 432 F.2d 647 (D.C.Cir.1970). The owner of Carl's also owned the entire shopping center, so the de-

rated by a wall and have no interior access between them. (*See* appendix.) There is a sign on the roof directly over the larger store designating it as "Carl's Carpet Mart." The doors to the other store are clearly labelled, "Miller-Arrington." The Miller-Arrington store is obviously a separate business, perhaps not a lively one at the time of the search, but certainly not part of the carpet store.

Further, the activities of the defendants gave no indication that the Miller-Arrington store was part of Carl's Carpet Mart. During the two months in which FBI agents kept the defendants under surveillance, they never saw them enter or leave through any doors except those marked "Miller-Arrington." Although armed with a warrant to search "Carl's Carpet Mart," the agents themselves did not begin their search at the carpet store, but proceeded directly through the Miller-Arrington doors and confined their search to that store.[2]

fendants naturally would pay their rent at the carpet store. Further, Carl's Carpet Mart could have had extension phones all over town, but a warrant to search "Carl's Carpet Mart" would not permit agents to search each of those locations.

2. The facts of this case are clearly distinguishable from the situation in *United States v. Wright*, 468 F.2d 1184 (6th Cir. 1972), cited by the majority. In *Wright*, agents with a warrant to search "The New Plaza Lounge" searched

The majority virtually admits that the warrant was improper, but nevertheless would sanction the search because the defendants signed returns on the warrant in which they designated the searched premises as "Carl's Carpet Mart." My brethren unduly emphasize a document which is nothing more than an inventory sheet. In the confusion surrounding the search, it is entirely probable that the defendants had no idea of the significance of the description on the return.

In sum, this case arose as a result of the agents' carelessness. These agents had two months to determine where they wanted to search. They should have obtained a warrant to search the Miller-Arrington store.[3] Any attempt to justify this search is an exercise in *post hoc* rationalization.

I therefore would affirm the district court's decision to suppress the evidence obtained in this search.

the lounge first and then searched a sealed-up back room which, up until three weeks before the search, had been connected to the lounge by a door.

3. The affidavit supporting the warrant (which was not attached to it or shown to the defendants at the time of the search) indicated that the agents did want to enter at the fourth set of doors which was the only entrance to the Miller-Arrington store.