**Gwin H. LONG, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 12–02–00030–CR.

Court of Appeals of Texas, Tyler.

May 14, 2003.

Landon L. Northcutt, for appellant.

James H. Owen, Life, Stark & Owen, P.C., Athens, for State.

Panel consisted of WORTHEN, C.J. and RAMEY, JR., Retired Chief Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.

JAMES T. WORTHEN, Chief Justice.

Gwin H. Long ("Appellant") was charged with five counts of gambling offenses, including gambling promotion,

keeping a gambling place, and possession of gambling devices and paraphernalia. The jury found her guilty of all five counts. The trial court assessed punishment at sixty days in jail and a $5,000.00 fine. In her sole issue, Appellant asserts the trial court erred in admitting certain evidence. We affirm.

## BACKGROUND

Scott Wilson, an investigator with the Texas Attorney General's gambling task force, participated in an undercover investigation of Appellant's business, Trains, during which he played some eight-liner machines. After gathering sufficient information, Wilson drafted a lengthy affidavit in support of a search warrant which authorized a search of Trains. The officers who executed the warrant searched two train cars, a silver car and a red caboose that Appellant used as her residence.

At trial, Wilson testified in great detail about playing some of the eight-liner machines located in a silver train car on Appellant's property at 1075 Pritchett Lane, Seven Points, Henderson County, Texas. He explained that a red caboose was next to the silver train car and when they searched the caboose, the officers discovered business records and cash. At this point in the testimony, counsel for the defense objected to the admissibility of the items seized from the caboose on the basis that the search warrant authorized a search of the silver train car only. The trial court heard argument from both sides outside the presence of the jury. Initially, the trial court agreed with counsel for the defense and refused to admit any items seized from the red caboose. At the conclusion of direct testimony by Wilson, the court recessed for the evening. The following morning, the State reurged its position regarding admissibility of the items seized from the red caboose. After argument from both sides, the trial court reversed its ruling and allowed the State to admit all items seized from the caboose.

The search warrant authorized law enforcement officers to:

> enter and search the said suspected place and premises, to wit: unnamed business known as "Train's", 1075 Pritchett Lane, Seven Points, Henderson County, Texas, ... with the authority to search for and seize implements, instruments, instrumentality's, [sic] proceeds and evidence used in the commission of the offenses of Gambling Promotion, Keeping a Gambling Place, Possession of a Gambling Device and Possession of Gambling Paraphernalia.

The affidavit supporting the warrant was incorporated into the warrant for all purposes and stated:

> 1. THERE IS IN SEVEN POINTS, HENDERSON COUNTY, TEXAS, A SUSPECTED PLACE AND PREMISES DESCRIBED AND LOCATED AS FOLLOWS:

> An unnamed business establishment known locally as Train's is located at 1075 Pritchett Lane, Seven Points, Henderson County, Texas. The structure is a silver in color passenger train car. The passenger train car is located north, 8/10 of a mile from State Highway 334 on the west side of Pritchett Lane, Seven Points, Henderson County, Texas. In front of this silver in color passenger train car is a black mail box located on the west side of Pritchett Lane with the numbers "1075". This is the only silver in color passenger train car located on Pritchett Lane 8/10 of a mile north of State Highway 334, Seven Points, Henderson County, Texas.

The affidavit stated that "at said suspected place and premises," evidence, including

"any and all business records and documentation pertaining to the unnamed business 'Train's,' " was to be seized and taken into custody.

## SCOPE OF WARRANT

In her sole issue, Appellant asserts the officers exceeded the scope of the search warrant by searching the red caboose which she was using as her residence. She argues that the warrant was limited in scope to her business, Trains, which was described in the affidavit as a "silver in color passenger train car." Noting that neither the warrant nor its supporting affidavit make reference to any other structures on Appellant's property, Appellant asserts there is no evidence suggesting the red caboose was associated with any gambling-related activity.

## APPLICABLE LAW

We review a court's ruling on the admissibility of evidence under an abuse of discretion standard. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996). We will not reverse such a ruling so long as it falls "within the 'zone of reasonable disagreement.' " *Id.* at 102 (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g)). "When a criminal defendant claims the right to protection under an exclusionary rule of evidence, it is his task to prove his case." *Rogers v. United States*, 330 F.2d 535, 542 (5th Cir.), *cert. denied*, 379 U.S. 916, 85 S.Ct. 265, 13 L.Ed.2d 186 (1964).

A search is unreasonable and violates the protections of the Fourth Amendment if it exceeds the scope of the authorizing warrant. U.S. CONST. amend. IV; *Long v. State*, 532 S.W.2d 591, 596 (Tex.Crim.App. 1975). While the scope of the search warrant is governed by its terms, the search may be as extensive as is reasonably required to locate items described in the warrant. *See Haynes v. State*, 475 S.W.2d 739, 741–42 (Tex.Crim.App.1971). Search warrants and affidavits should be considered in a common sense manner, and hypertechnical readings should be avoided. *See Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 591, 21 L.Ed.2d 637 (1969). If a warrant specifies a place under the designation by which it is commonly known, though the exact description may not be correct, the warrant will be upheld. *United States v. Palmer*, 667 F.2d 1118, 1120 (4th Cir.1981), *cert. denied*, 464 U.S. 817, 104 S.Ct. 76, 78 L.Ed.2d 88 (1983).

Both the warrant and its supporting affidavit used the phrase "place and premises" followed by an address and a description of Appellant's place of business. The Texas Court of Criminal Appeals has explained that

[t]he term "premises" has, in legal parlance, a meaning so broad and varied that its interpretation in a given case is to a great extent governed by the context; that is to say, the manner of its use in the connection found tends to portray the intent with which it was embraced in the document.

*Comeaux v. State*, 118 Tex.Crim. 223, 228–29, 42 S.W.2d 255, 258 (Tex.Crim.App. 1931) (op. on reh'g). In *Comeaux*, a warrant to search "a certain place and premises" at a specified address was held to include a detached garage on the same lot as the defendant's residence. *Id.* The same language has been held to allow the search of a doghouse thirty to forty-two feet from the residence. *Bess v. State*, 636 S.W.2d 9, 10 (Tex.App.Corpus Christi 1982, pet. ref'd, untimely filed). In *Seale v. State*, 118 Tex.Crim. 324, 39 S.W.2d 58 (Tex.Crim.App.1931), that reasoning was applied to the language of a warrant authorizing the search of a business comprising a filling station and a detached garage.

In approving the search, that court held that the description, "a certain place, building and premises" being used by the defendant, included the detached garage. *Id.* at 59. The Fifth Circuit followed this reasoning when it concluded that the search of a detached garage was within the scope of a warrant that authorized the search of the premises described as "a certain building, house or place of" the defendant. *United States v. Moore,* 743 F.2d 254, 256 (5th Cir.1984).

Other jurisdictions have reached the same conclusion. *See United States v. Earls,* 42 F.3d 1321 (10th Cir.1994), *cert. denied,* 514 U.S. 1085, 115 S.Ct. 1800, 131 L.Ed.2d 727 (1995) (Warrant authorizing search of premises at specified address and giving description of residence held to include detached garage, shed, and office at that location.); *United States v. Griffin,* 827 F.2d 1108 (7th Cir.1987), *cert. denied,* 485 U.S. 909, 108 S.Ct. 1085, 99 L.Ed.2d 243 (1988) ("Premises" particularly described and located at stated address included the yard and toolshed.); *United States v. Bonner,* 808 F.2d 864 (1st Cir. 1986), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1632, 95 L.Ed.2d 205 (1987) (Where warrant included an attachment containing a description of "properties" to be searched, and corrected warrant included address, "properties" held synonymous with "premises" and therefore the warrant embraced detached garage on the property.); *Oregon v. Showalter,* 134 Or.App. 34, 894 P.2d 504 (1995) (Warrant for "premises" at particular address included a disabled truck in the yard.); *Barton v. Georgia,* 161 Ga.App. 591, 288 S.E.2d 914 (1982) (Warrant authorizing search of described "premises" at particular address included outbuildings not specifically described.); *People v. Muniz,* 198 Colo. 194, 597 P.2d 580 (1979) (Warrant supported by affidavit identifying "premises" at a particular address included a shed in the backyard.).

Based on an interpretation of the "place and premises" language in the warrant, the fact that the silver train car and the red caboose were two separate structures and not physically connected does not lead us to conclude that the red caboose was not included in the scope of the search warrant. We note that the majority of the cases construing the "place and premises" language involve searches of residences. Therefore, we turn now to cases presenting discussions of the scope of warrants to search businesses.

In *United States v. Heldt,* 668 F.2d 1238 (D.C.Cir.1981), the court considered the scope of a warrant authorizing a search of "the suite of offices of Mr. Henning Heldt." The warrant described the location of his office within the building, but not the extent of the "suite." Officers searched a freestanding penthouse room, or hut, built on top of the roof, nine feet away from the defendant's office windows, and accessible through his office, that was later identified as being another individual's office. Considering its location and accessibility from the defendant's office, the court held that it was reasonable for officers executing the warrant to believe that room was part of the defendant's office suite. *Id.* at 1263–66.

In *United States v. Judd,* 687 F.Supp. 1052 (N.D.Miss.1988), *aff'd,* 889 F.2d 1410 (5th Cir.1989), the search warrant authorized a search of the premises known as Kilgore Mining Company, which was located at a specifically named address. Officers were to seize all of the company's business records and documents. At the time of the search, when asked the location of bookkeeping and accounting records, the defendant led the officers out through the front entrance of his company's office and to the next door that opened into a breezeway which led into Kilgore Mining

Company's bookkeeping office. The bookkeeping office was physically located at a separate address from that listed on the warrant. Noting that the officers were only aware of one address and the two offices were part of the same building, the court held that it was reasonable to consider the bookkeeping office as part of the business's office suite and therefore covered by the warrant. *Id.* at 1059.

A California court upheld the search of an immobile van located at the defendant's place of business based on a warrant authorizing a search of a warehouse at a particular address "occupied by Hart Trucking Company, and appurtenances." *People v. Fitzwater*, 260 Cal.App.2d 478, 483, 67 Cal.Rptr. 190, *cert. denied*, 393 U.S. 953, 89 S.Ct. 378, 21 L.Ed.2d 364 (1968). The court reasoned that the entire lot was a single integral unit under the defendant's control. *Id.* at 488, 67 Cal. Rptr. 190. In *People v. Duskin*, 85 Misc.2d 839, 380 N.Y.S.2d 895 (N.Y.D.C. 1976), the search warrant authorized a search of Jet Aerosol Corporation, located in a particular room at a specified address. The defendant led officers to a different room to search. The court cited to case law stating that the intent and direction of a warrant is to authorize a search of as much of the premises as was occupied by the corporation to be searched. *Id.* at 899. Although the warrant was very specific and the room searched was not identified in the warrant, the court upheld the search as being within the scope of the warrant. *Id.*

## DISCUSSION

After reviewing relevant case law, we conclude that the search warrant was properly construed as authorizing a search of the red caboose. Separate structures located on "premises" identified in the warrant can be included in the scope of the

warrant. *See Comeaux*, 42 S.W.2d at 258. The warrant identified the "premises" and provided an exact street address. Although Appellant attempted to argue that the red caboose had a separate street address, she did not provide proof of that assertion. Moreover, Wilson searched county tax records and determined that Appellant's land was assigned only one address. Further, a separate street address is not necessarily determinative and all circumstances must be considered. *See Judd*, 687 F.Supp. at 1059. The fact that Appellant was also using the caboose as her residence does not alter our view. Officers had no indication that the caboose was a residence prior to entering it. The caboose was located less than thirty feet from the silver train car. Appellant was exiting the caboose when law enforcement officers arrived to execute the warrant, verifying her connection to the caboose. The land belonged to Appellant, and the silver train car and red caboose were under her control. *See Fitzwater*, 260 Cal. App.2d at 488, 67 Cal.Rptr. 190.

Specific mention of the silver train car in the warrant does not limit the scope of the search. *See Griffin*, 827 F.2d at 1115. The warrant's intent was to authorize a search of as much of the "premises" as was occupied by the business known as "Trains." *See Duskin*, 380 N.Y.S.2d at 899. The silver train car housed twenty machines and was open to the public. It is reasonable to suspect the business records for "Trains," Appellant's business, were not located in the same room as the machines. *See Griffin*, 827 F.2d at 1115. The record indicates there were other structures on the lot but only the train cars were searched. The officers' conduct was reasonable in light of the information available to them at the time they acted. *See Judd*, 687 F.Supp. at 1058–59. It was reasonable, and as it turned out, correct, for the officers to believe that the red

caboose was part of the business. The trial court was correct in determining that the description in the warrant encompasses both the silver train car and the red caboose, which were located adjacent to one another on Appellant's property. The warrant did not leave so much to the discretion of the officers that it can be said the warrant authorized an unbounded general search in violation of the particularity requirement. *See Bonner,* 808 F.2d at 868.

An exception to the rule excluding evidence obtained in violation of the constitution or laws applies when evidence is obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause. Tex.Code Crim. Proc. Ann. art. 38.23(b) (Vernon Supp. 2003). These requirements were met here. Wilson testified that the "warrant called for the search of the buildings on that property," not just the train car where the eight-liners were located. All structures on the property shared one address. There is nothing in the record to indicate the officers knew at the time of the search, or could have reasonably anticipated, that Appellant used the caboose as her residence. Therefore, even if the officers had exceeded the scope of the warrant, the evidence from the red caboose would be admissible under the good faith exception. *See Earls,* 42 F.3d at 1327; *Judd,* 687 F.Supp. at 1059.

### Conclusion

Appellant has not met her burden to show the trial court abused its discretion when it admitted the evidence seized from the red caboose. We overrule Appellant's sole issue.

We affirm the trial court's judgment.

GRIFFITH, J., dissenting.

I respectfully dissent. I would hold the search exceeded the parameters permitted by the search warrant, and improperly intruded into the residence of Appellant without an authorizing search warrant, and, therefore, evidence obtained in the search of Appellant's residence should have been excluded from Appellant's trial.

In the course of his undercover investigation of Appellant's business, Trains, Scott Wilson played eight-liner machines and gathered other evidence that Appellant was using her silver railroad car for gambling purposes. Wilson's affidavit, supported by, and consistent with, the evidence he gathered in his investigation, specifically described the structure in which he had seen gambling activity as "a silver in color passenger train car." Although there was also a red caboose on the premises, no mention of the red caboose was made in either the affidavit in support of the search warrant or in the search warrant. The evidence at the hearing on the admission of records taken from the red caboose, and the evidence during the trial clearly established that the officers knew, and both the State conceded and Appellant contended, the red caboose was Appellant's residence.

The affidavit for the search warrant noted that "unnamed business establishment known locally as Train's is located at 1076 Pritchett Lane, Seven Points, Henderson County, Texas. The structure is a silver in color passenger train car." Three times in the paragraph describing and locating the premises, the affiant, Wilson, specifically described the place and premises as a silver passenger train car, and once as only "[t]he passenger train car." The final description definitively noted that "[t]his is the only silver in color passenger train car located on Pritchett Lane...."

The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. The Texas Constitution states:

> The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

TEX. CONST. art. I, § 9.

The United States Supreme Court has consistently given homes heightened protection from search and seizure. In *Payton v. New York*, the Supreme Court wrote:

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their . . . houses . . . shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion." *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house.

*Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980); *see also Kyllo v. United States*, 533 U.S. 27, 34, 121 S.Ct. 2038, 2043, 150 L.Ed.2d 94 (2001) ("in the case of the search of the interior of homes—the prototypical and hence most commonly litigated area of protected privacy—there is a ready criterion, with roots deep in the common law, of the minimal expectation of privacy that **exists,** and that is acknowledged to be **reasonable.**")(emphasis in original).

Had Wilson wanted to search the red caboose, which was established as being known as Appellant's residence, he had only to include sufficient information in his affidavit to establish probable cause to search the Appellant's residence, the red caboose, and, based on that probable cause affidavit, to obtain a search warrant for the red caboose, duly signed by the reviewing magistrate.[1] Wilson's affidavit con-

---

1. "The point of the Fourth Amendment . . . is not that it denies law enforcement officers the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably

tains no suggestion of any criminal activity in any other building located at 1076 Pritchett Lane, Seven Points, Henderson County, Texas. Rather, the facts contained in his affidavit explicitly specified only the silver colored passenger rail car.

As the affidavit in support of the search warrant allowed the officers to only search the silver passenger rail car, the search of Appellant's residence, the red caboose, which was a separate building[2], was beyond the scope of the search authorized by the search warrant. Article 38.23 of the Texas Code of Criminal Procedure provides that "[n]o evidence obtained ... in violation of any provisions of the Constitution or law of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon Supp.2003).

The evidence having been obtained during the search of Appellant's home was beyond the scope of the search warrant and should have been excluded from the trial.

yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policemen or Government enforcement agent." *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948) (footnotes omitted).

2. That Appellant's residence, the red caboose, was a separate building is a very salient factor in evaluating the scope of the search permitted under the search warrant. Where a building is the subject of a search warrant, and a defendant claims a portion of the building to be his residence, greater latitude is permitted the officers executing the search. *See Amir v. State,* 45 S.W.3d 88 (Tex.Crim. App.2001).