IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00391-CR

 

William Loyd MacEachran,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 



From the 249th District Court

Johnson County, Texas

Trial Court No. F39146

 



MEMORANDUM  Opinion










 

      MacEachran[1] appeals his convictions for possession of less
than one gram of methamphetamine; and, with the intent to manufacture
methamphetamine, possession of immediate precursors thereto.  See Tex. Health & Safety Code Ann.
§ 481.115(a)-(b) (Vernon 2003), § 481.124(a), (d) (Vernon Supp. 2006);
see also id. § 481.002(22)
(Vernon Supp. 2006) (“immediate precursor” defined)); 29 Tex. Reg. 6723 (2004) (Tex.
Dep’t Pub. Safety, Immediate Precursor List) (amended 2005) (current version at
37 Tex. Admin. Code § 13.116
(West, Westlaw through Sept. 30, 2006)).  We affirm.

      In MacEachran’s one issue, he contends
that the trial court erred in overruling MacEachran’s motion to suppress
evidence found in a search of MacEachran’s trailer home, referred to in the
search-warrant affidavit as the “suspected place.”  (E.g., 1 C.R. 68.) 
MacEachran argues that the affidavit did not show probable cause for the
magistrate to issue the warrant.  

      “We review a trial court’s ruling on a
motion to suppress evidence for an abuse of discretion.”  Swain v. State, 181
S.W.3d 359, 365 (Tex. Crim. App. 2005); accord Balentine v. State, 71
S.W.3d 763, 768 (Tex. Crim. App. 2002).  “When we review a trial court’s ruling
on a motion to suppress, we give great deference to the trial court’s
determination of historical facts while reviewing the court’s application of
the law de novo.”  Torres v. State, 182 S.W.3d 899, 902 (Tex.
Crim. App. 2005); accord Swain at 365; Balentine at 768.

The appellate court must view the evidence in a
light most favorable to the trial court’s ruling when the trial court does not
file any findings of fact.  When . . . no such findings of fact were
made, the appellate court will assume that the trial court made implicit
findings of fact that support its ruling, as long as the findings are supported
by the record.

Torres at
902; accord Swain at 365; Balentine at 768.   

      “The right of the people to be secure in
their persons, houses, papers, and effects, against unreasonable searches and
seizures, shall not be violated, and no Warrants shall issue, but upon probable
cause . . . .”  U.S.
Const. amend. IV; see Tex.
Const. art. I, § 9.[2]  “[T]he substance of all the definitions of
probable cause is a reasonable ground for belief of guilt.”  Maryland v.
Pringle, 540 U.S. 366, 370 (2003) (quoting Brinegar v. United States, 338
 U.S. 160, 175 (1949)).  For a search warrant, “[p]robable cause exists when
‘there is a fair probability that contraband or evidence of a crime will be
found in a particular place.’”  United States v. Grubbs, 126 S. Ct.
1494, 1499 (2006) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)); accord Johnson v. State, 803 S.W.2d 272, 288 (Tex. Crim. App.
1990).  

      “An affidavit must provide the magistrate
with a substantial basis for determining the existence of probable cause, and
[a] wholly conclusory statement . . . fail[s] to meet this
requirement.”  Gates, 462 U.S. at 239; accord Swearingen v.
State, 143 S.W.3d 808, 810 (Tex. Crim. App. 2004) (quoting Gates at
239).  Such a “mere conclusory statement . . . gives the magistrate
virtually no basis at all for making a judgment regarding probable cause.”  Gates
at 239; Johnson, 803 S.W.2d at 288 (quoting Gates at 239). 
“Sufficient information must be presented to the magistrate to allow that
individual to determine probable cause; his action cannot be a mere
ratification of the bare conclusions of others.”  Gates at 239; accord
Johnson at 288.

      “[A]fter-the-fact scrutiny by courts of
the sufficiency of an affidavit should not take the form of de novo
review.”  Gates, 462 U.S. at 236; accord Johnson, 803 S.W.2d at
289.  “A magistrate’s ‘determination of probable cause should be paid great
deference by reviewing courts.’”  Gates at 236 (quoting Spinelli v.
United States, 393 U.S. 410, 419 (1969)); see Swearingen, 143 S.W.3d
at 810.  Courts “‘should not invalidate [warrants] by interpreting [affidavits]
in a hypertechnical, rather than a commonsense, manner.’”  Gates at 236
(quoting United States v. Ventresca, 380 U.S. 102, 109 (1965)
(alterations in Gates)); see Long v. State, 132 S.W.3d 443, 446
(Tex. Crim. App. 2004) (quoting Long v. State, 108 S.W.3d 424, 426 (Tex.
App.—Tyler 2003), rev’d on other grounds, Long, 123 S.W.3d 443).  “[T]he
traditional standard for review of an issuing magistrate’s probable-cause
determination has been that so long as the magistrate had a ‘substantial basis
for . . . [concluding]’ that a search would uncover evidence of
wrongdoing, the Fourth Amendment requires no more.”  Gates at 236
(quoting Jones v. United States, 362 U.S. 257, 271 (1960)) (alterations
in Gates); Swearingen at 810 (quoting Gates at 236).

If the admissibility of evidence obtained as a
result of a search conducted under a warrant is challenged in later litigation,
the trial judge who resolves that challenge may be called upon to review the
magistrate’s determination—implicit in the issuance of the warrant—that the
facts in the affidavit constituted probable cause.  If the trial judge’s ruling
is considered on appeal, the appellate tribunal is, in essence, called upon to
review the trial court’s review of the magistrate’s decision.

40 George
E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure
§ 6.58, at 378 (2d ed. 2001).

      “Probable cause exists where ‘the facts
and circumstances within . . . [the officers’] knowledge and of which
they had reasonably trustworthy information [are] sufficient in themselves to
warrant a man of reasonable caution in the belief that’ an offense has been or
is being committed.”  Pringle, 540 U.S. at 372 (quoting Brinegar, 338
 U.S. at 175-76) (bracketed alterations in Pringle); accord Cassias
v. State, 719 S.W.2d 585, 587-88 (Tex. Crim. App. 1986).  

      “In assessing the sufficiency of an
affidavit for . . . a search warrant, the reviewing court is limited
to the four corners of the affidavit.”  Hankins v. State, 132 S.W.3d
380, 388 (Tex. Crim. App. 2004); accord Hall v. State, 394 S.W.2d 659
(Tex. Crim. App. 1965); McLennan v. State, 109 Tex. Crim. 83, 3 S.W.2d
447 (1928).  “The reviewing court should interpret the affidavit in a common
sense and realistic manner, recognizing that the magistrate was permitted to
draw reasonable inferences.”  Hankins at 388; accord Gates, 462 U.S. at 240; Faulkner v. State, 537 S.W.2d 742, 744 (Tex. Crim. App. 1976).  “The
magistrate may rely on the affidavit of a police officer based on his knowledge
or the knowledge of other officers.”  Johnson, 803 S.W.2d at 289.

      “[O]dor evidence alone is sufficient to
establish probable cause.”  Wynn v. State, 996 S.W.2d 324, 327 (Tex.
App.—Fort Worth 1999, no pet.); see Gish v. State, 606 S.W.2d 883, 886
(Tex. Crim. App. [Panel Op.] 1980) (ether); Long v. State, 137 S.W.3d
726, 731 (Tex. App.—Waco 2004, pet. ref’d) (ether); Buchanan v. State, 129
S.W.3d 767, 774 (Tex. App.—Amarillo 2004, pet. ref’d) (ether).  “[T]he smell of
ether can provide an element of probable cause for a search” “where persons who
[a]re shown to be familiar with odors related to drug manufacturing smell[]
such odors emanating from a particular location.”  Lowery v. State, 843
S.W.2d 136, 142 (Tex. App.—Dallas 1992, pet. ref’d).  

      First, MacEachran complains concerning
matters that took place before officers went to his trailer.  The affidavit of
Burleson police officer Larry Sparks states:

1.   On 12-15-2004 Investigator Sparks of the
STOP Narcotics Task Force had received a call from C[onfidential] I[nformant]
[“CI”] #A1-04-0521 in reference to a subject that was observed purchasing
numerous cans of starting fluid from the Wal-Mart located in Burleson, Texas.

2.   The CI later observed the subject re-enter
the Wal-Mart located in Burleson and attempt to conceal several cans of starter
fluid and exit the store without paying.

3.   The CI detained the individual for the
Burleson Police Department for Theft under $50.00.

4.   The subject was identified as William Loyd
Maceachran by the Burleson Police Department.  Officers issued Maceachran a
citation for Theft under $50.00 and released him at the scene.

5.   The CI notified Investigator Sparks of
Maceachran’s activity based on previous familiarization with the components and
chemicals used to manufacture methamphetamine.

. . . .

 

16. Investigator Sparks had conducted
surveillance on [the suspected place] in 2003 in reference to possible
methamphetamine manufacturing.

17. During surveillance conducted in 2003,
Investigator Sparks arrested a D[.] M[.] leaving the suspected place, for
Possession of a controlled substance.

[sic] (1 C.R. 69-70 (bracketed alterations and
ellipsis added)); see Tex. Penal
Code Ann. § 31.03(a), (e)(1)(A) (Vernon Supp. 2006) (theft).

      MacEachran argues that “the criminal
activity described by the confidential informant does not take place at or near
[MacEachran]’s residence,” and “[n]either does the confidential informant state
that he has received any information that criminal activity had occurred at [MacEachran]’s
residence.”  (Br. at 6.)  MacEachran also argues that the affidavit “provides
no facts supporting the credibility of the confidential informant or the
informant’s information.”[3]  (Id. at 7.)  MacEachran also argues
that “no facts are set forth in the affidavit explaining how Investigator
Sparks determined that” the address of the suspected place “was the residence
of Appellant.”  (Id. at 9.)  MacEachran also argues that the warrant was
“stale.”  (Id. at 11 (citing Hafford v. State, 989 S.W.2d 439,
440 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d).)

      MacEachran concedes that “where conclusory
statements are used in support of probable cause, the affidavit should be
reviewed absent the conclusory statements in assessing whether probable cause for
a search exists.”  (Br. at 11 (citing Massey v. State, 933 S.W.2d 141,
148 (Tex. Crim. App. 1984)).)  Even disregarding the information supplied by
the informant and prior surveillance, for the reasons stated below, the
affidavit states probable cause.

      Next, MacEachran complains concerning the
officers’ approach to MacEachran’s trailer.  The affidavit continues:

6.   Investigator Sparks and Investigator Adams
went to the All American Texas RV Park at approximately 10:30 P.M. to conduct
surveillance of Maceachran’s residence located at the suspected place.

. . . .

9.   . . . Investigators made contact
with the occupant[] of the residence and identified [hi]m as William Loyd
Maceachran W/M 09-05-1958 . . . .

[sic] (1 C.R. 70 (bracketed alterations and
ellipses added).)  MacEachran argues that the affidavit “provides no facts
asserting that the individual he contacts at” MacEachran’s trailer “is one and
the same individual that was arrested and cited at Wal-mart for shoplifting.” 
(Br. at 6-7.)  The affidavit states that the trailer was “in charge of and
controlled by” a “William Loyd Maceachran (W/M DOB: 09-05-1958) as verified by
an investigation conducted by Burleson Police Department reference Theft under
$50 from the Wal-mart on 12-15-2004.”  [sic] (1 C.R. 68.)  The affidavit thus
relies on information from other officers in identifying MacEachran by name,
race, gender, and date of birth.  It is a reasonable inference that the William
Loyd Maceachran identified as the thief is one and the same as appellant William
Loyd Maceachran identified as being in control of the trailer.  

      The affidavit continues:

7.   Upon first arrival Investigators smelled a
very strong odor of ether common with the manufacturing of methamphetamine.

8.   Investigators were able to determine the
origin of the odor to be coming from the suspected place.

9.   For the health and safety of the community
Investigators made contact with the occupant[] of the residence and identified
[hi]m as William Loyd Maceachran W/M 09-05-1958 . . . .

10.   Investigator Sparks observed a hand pumped
sprayer located by the side of the trailer that had been altered to create an
HCL generator, commonly used in the manufacture of methamphetamine.

11.   Investigator Sparks also observed a
refrigerator next to the HCL generator that was emitting a strong odor of
ether.

12.   Investigator Sparks asked Maceachran what
the spray pump was used for?  Maceachran stated he had just found it.

13.   Maceachran stated on his own free will
that there was possibly a jar of ether located within the refrigerator. 
Maceachran could offer no reason why he was storing ether in this manner.

14.  Maceachran’s criminal history showed two
entries for Possession of Controlled Substance.

[sic] (1 C.R. 70 (bracketed alterations and
ellipsis added).)

      MacEachran concedes that the magistrate
could properly have considered that the detective smelled the strong odor of
ether from MacEachran’s trailer and MacEachran’s criminal record.[4]  See Massey, 933 S.W.2d at 148.  MacEachran
complains, however, of the affidavit’s statement that the detective “observed a
hand pumped sprayer located by the side of the trailer that had been altered to
create an HCL generator, commonly used in the manufacture of methamphetamine.” 
(Br. at 10 (quoting I C.R. 90).)  MacEachran argues, “The magistrate cannot
determine how the ‘hand pumped sprayer’ has been altered or what changes have
been made that would cause” the detective “to assert that this perfectly legal
and quite common tool had become criminal in nature.”  (Br. at 11.)    

      The affidavit states the detective’s
experience in investigating the manufacture of methamphetamine as follows:  

Your Affiant is a Peace Officer under the laws
of the state of Texas as defined by the Texas Code of Criminal Procedure
Article 2.12 (3).  In May of 1992 your Affiant received an Associated
Degree in Criminal Justice/Protective Services.  Your Affiant graduated from Western Carolina University, with a Bachelor of Science Degree in Criminal Justice in May
of 1994.  In November of 1999 your affiant successfully completed the 146th Basic Police Academy at C.O.G. (North Texas Council of Government).  Your Affiant received
a Basic Peace officers Certificate from the Texas Commission on Law Enforcement
Officer Standards and Education.  Your Affiant has been in the field of law
enforcement for over 4 years.  In July 1999 the City of Burleson employed your
Affiant as a patrol officer.  On 10/01/2002 your Affiant was assigned to the
STOP THE OFFENDER PROGRAM (S.T.O.P.) Narcotics Task Force as an investigator. 
The S.T.O.P. Narcotics Task Force is responsible for the enforcement of all
narcotics violations within the Johnson, Hood, Somervell and Erath counties. 
Your Affiant has received formal training in the field of narcotics, which
includes but is not limited to Basic Narcotics, Clan Lab School, Drug
Identification, Raid Planning, Undercover Operations, Surveillance Techniques,
Tactical Operations, Hostage Rescue, and Close Quarters Combat.  Affiant has
personally conducted or assisted other peace officers in numerous drug-related
arrests and investigations.

[sic] (1 C.R. 69); see Tex. Code Crim. Proc. Ann. art. 2.12(3)
(Vernon Supp. 2006).  In light of the detective’s training in the manufacture
of methamphetamine and of the odor of ether, a chemical precursor to the
manufacture of methamphetamine, from MacEachran’s trailer, the trial court did
not err in finding that the affidavit stated a substantial basis for
determining the existence of probable cause to search the trailer.  Therefore,
the court did not abuse its discretion in overruling the motion to suppress the
evidence of the search.  We overrule MacEachran’s issue.  

      Having overruled MacEachran’s
sole issue, we affirm.

TOM GRAY

Chief Justice

Before Chief Justice Gray,

      Justice Vance, and

      Justice Reyna

(Justice Vance concurs
in the judgment.)

Affirmed

Opinion delivered and
filed October 11, 2006

Do not publish

[CR25]










[1]  MacEachran’s
name is spelled variously throughout the record.  We take the spelling
“MacEachran” from his docketing statement.





[2]  “. . .
Article I § 9 of the Texas Constitution and the Fourth Amendment of the
Federal Constitution are ‘in all material aspects the same.’”  Johnson v.
State, 803 S.W.2d 272, 288 (Tex. Crim. App. 1990) (quoting Eisenhauer v.
State, 754 S.W.2d 159[, 162] (Tex. Crim. App. 1989) [(plurality op.)]). 
“[A]rticle I, section 9 of the Texas Constitution ‘does not offer greater
protection to the individual than the Fourth Amendment.’”  Westfall v.
State, 10 S.W.3d 85, 88 (Tex. App.—Waco 1999, no pet.) (quoting Hulit v.
State, 982 S.W.2d 431, 436 (Tex. Crim. App. 1998)); see generally 40
George E. Dix & Robert O. Dawson,
Texas Practice: Criminal Practice and Procedure § 6.11 (2d ed.
2001).





[3]  MacEachran
concedes that the affidavit states that the informant’s information was “based
on previous familiarization with the components and chemicals used to
manufacture methamphetamine.”  (Br. at 8-9 (quoting I C.R. 90).)  MacEachran
argues, “It is not clear whether such ‘familiarization’ is based upon
education, classroom experience, law enforcement training, law enforcement
experience, or simply experience with criminal activity.”  (Br. at 9.)  An affidavit need not recite the specific method of an informant’s acquaintance
with methamphetamine.  Long, 137 S.W.3d at 731.





[4]  MacEachran
contends that the ether that the officers smelled is the starter fluid that he
stole.